UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BANK OF MONTREAL,                                        :
                                                        :
                              Plaintiff,                :
              -against-                                 :
                                                        :       No. 1:09-cv-07557 (GBD)
OPTIONABLE, INC., MF GLOBAL INC.,                       :
KEVIN P. CASSIDY, EDWARD J. O'CONNOR                    :       ORAL ARGUMENT REQUESTED
MARK A. NORDLICHT, RYAN B.                              :
WOODGATE, SCOTT CONNOR, and                            :
JOSEPH D. SAAB,                                         :
                              Defendants.               :
                                                        :
----------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## MARK NORDLICHT'S MOTION TO DISMISS THE COMPLAINT

Eliot Lauer
Jason Gottlieb
Rachael R. Yocum
**CURTIS, MALLET-PREVOST, COLT
 & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Tel:  (212) 696-6000
Fax:  (212) 697-1559

*Attorneys for Defendant Mark Nordlicht*

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................. 3

    I.       BMO FAILS TO STATE A CLAIM AGAINST NORDLICHT FOR
           AIDING AND ABETTING FRAUD ................................................................. 3

           A.     BMO Fails to Allege Facts Giving Rise to a Strong Inference That
                   Nordlicht Actually Knew of Lee's Fraud .................................................. 4

           B.     BMO Fails To Allege that Nordlicht Substantially Assisted Lee's
                   Fraud ....................................................................................................... 7

    II.      BMO FAILS TO STATE A CLAIM AGAINST NORDLICHT FOR
           AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY..................... 8

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

PAGE

<u>**Cases**</u>

*380544 Canada, Inc. v. Aspen Technology, Inc.*,
  544 F.Supp.2d 199 (S.D.N.Y. 2008) ............................................................... 4, 5, 7

*Armstrong v. McAlpin*,
  699 F.2d 79 (2d Cir. 1983) .................................................................................. 4, 7

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009).............................................................................................. 5

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*,
  754 F.2d 57 (2d Cir. 1985) ....................................................................................... 7

*Fezzani v. Bear, Stearns & Co. Inc.*,
  592 F.Supp.2d 410 (S.D.N.Y. 2008) ....................................................................... 7

*Global Mins. & Metals v. Holme*,
  824 N.Y.S.2d 210 (1st Dep't 2006).......................................................................... 9

*Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  No. 00 CV. 8688 (WHP), 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003)............... 8

*Ingle v. Glamore Motor Sales*,
  140 A.D.2d 493 (2d Dep't 1988), *aff'd* 73 N.Y.2d 183 (1989)............................... 10

*Kaufman v. Cohen*,
  760 N.Y.S.2d 157 (1st Dep't 2003) ...................................................................... 8, 9

*Kolbeck v. LIT America, Inc.*,
  939 F. Supp. 240 (S.D.N.Y. 1996) ........................................................................ 8, 9

*Kramer v. Lockwood Pension Servs., Inc.*,
  ___ F. Supp. 2d ___, 2009 WL 2878100 (S.D.N.Y. Sept. 1, 2009) ........................ 10

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) .......................................................................... 3, 4, 6, 7

*Mazzaro de Abreu v. Bank of America Corp.*,
  525 F. Supp. 2d 381 (S.D.N.Y. 2007) ............................................................. 8, 9, 10

*Rosner v. Bank of China*,
  No. 06 CV 13652, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008)............................. 4

*Ross v. Bolton*,
  639 F.Supp. 323 (S.D.N.Y. 1986) ........................................................................... 7

*S & K Sales Co. v. Nike, Inc.*,
  816 F.2d 843 (2d Cir. 1987) .................................................................................... 9

*Schenkman v. N.Y. Coll. of Health Professionals*,
  29 A.D.3d 671 (2d Dep't 2006).............................................................................. 10

*Vitale v. Steinberg*,
   307 A.D.2d 107 (1st Dep't 2003) ............................................................. 10

## **Statutes**

Federal Rules of Civil Procedure Rule 8(a) ............................................................. 5, 9

Federal Rules of Civil Procedure Rule 9(b) ......................................................... passim

Defendant Mark Nordlicht respectfully submits this memorandum of law in support of his motion to dismiss Bank of Montreal's ("BMO" or "Plaintiff") Complaint.

## PRELIMINARY STATEMENT

BMO's 51-page Complaint barely mentions Mark Nordlicht.  Each time it does, the Complaint does little more than conclusorily recite the elements of the two claims asserted against him, lumping in Nordlicht with multiple other entities with no specificity whatsoever as to what Nordlicht himself is supposed to have done.  Apparently, Nordlicht is named because, as the Complaint recites (at ¶ 9), he is a shareholder of Optionable, and was the non-executive chairman of Optionable's board of directors during the time at issue.  But there is no allegation that Nordlicht was ever employed by Optionable; that Nordlicht ever served in an executive capacity at the company; or that he was ever involved in the day-to-day operations of the company.  In fact, the Complaint wholly fails to allege any facts suggesting that Nordlicht knew anything about the alleged wrongdoing by BMO employees, or provided any assistance whatsoever to those employees' wrongdoing.

BMO's Complaint details how David Lee, formerly BMO's head of natural gas options trading, deliberately mis-valued a number of options transactions on BMO's books, in order to cover up his own trading losses.  Lee entered a series of "exchange of option for option" ("EOO") trades with Optionable, which, as the Complaint explains, involved BMO simultaneously buying an "American-style" option (which allows a holder to buy or sell a security any time before the option's expiration date) and selling a "European-style" option (which can only be exercised on the option's expiration date).  Because the American-style option offers its holder more flexibility, it is more valuable.  As a result, each time BMO bought a higher-valued American-style option from a counterparty and sold a lower-value European-

style option to that same counterparty, the transaction resulted in a net cash payment by BMO to the counterparty.  Compl. ¶¶ 83-84.  Each of these EOO trades "involved a huge quantity of underlying futures contracts."  Compl. ¶ 87.

The Complaint alleges that David Lee was entering these EOO trades with Optionable and other entities (some of which were affiliated with Optionable), at a loss to BMO and a corresponding gain to the counterparties, and then deliberately mis-valuing his books at BMO to make these trades seem profitable, in an attempt to cover up other losses in his trading book.  The Complaint also alleges that Lee's boss, Robert Moore, helped Lee conceal that fraud.

The Complaint utterly fails to plead any facts showing Nordlicht **actually knew** that Lee was booking the options transactions fraudulently.  Factual allegations of such actual knowledge are required to plead aiding and abetting (either of fraud or breach of fiduciary duty).  Yet, BMO does not even allege any "red flags," facts that would have alerted Nordlicht to Lee's fraud, or made him suspicious in any way – much less facts that give rise to a strong inference that Nordlicht actually knew Lee was committing fraud.  Other than a conclusory assertion that Nordlicht somehow "knew" Lee was committing fraud, there is no factual allegation that Nordlicht knew how Lee was booking the trades, or that Nordlicht knew the extent of Lee's trading activity such that Nordlicht knew that these particular trades were being done for fraudulent reasons.

BMO also completely fails to allege that Nordlicht himself played **any role whatsoever** in the EOO transactions, let alone the real fraud at issue, Lee's fraudulent booking of those transactions.  Thus the Complaint clearly falls short of the required legal standard for alleging aiding and abetting – that Nordlicht provided substantial assistance.

For the same reasons, BMO fails to allege that Nordlicht knew that Lee or Moore were breaching any duty they may have owed to BMO.  In fact, the Complaint does not even allege that Lee or Moore had any fiduciary duty to BMO in the first place, much less that Nordlicht knew about it.

## ARGUMENT

BMO's complaint against Optionable and the other defendants[1] should be dismissed in its entirety for the reasons set forth in Optionable, Inc.'s Memorandum in Support of Its Motion to Dismiss the Complaint and ("Optionable Mem."), which Nordlicht incorporates by reference.  But more specifically, BMO does not come close to stating the two claims it makes against Nordlicht:  aiding and abetting fraud (Count 3); and aiding and abetting breach of fiduciary duty (Count 4), both of which require actual knowledge.[2]

## I.   BMO FAILS TO STATE A CLAIM AGAINST NORDLICHT FOR AIDING AND ABETTING FRAUD

To state of claim against Nordlicht for aiding and abetting fraud, BMO must allege – with the heightened particularity required by Rule 9(b) of the Federal Rules of Civil Procedure – Nordlicht's "actual knowledge" of the fraud and that he provided "substantial assistance to advance the fraud's commission."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006) (dismissing aiding and abetting fraud claim where plaintiffs failed to allege "actual knowledge of fraud with the particularity necessary to survive the heightened pleading

---

[1]     The Complaint alleges that several governmental entities, including the New York County District Attorney's Office, the United States Attorney's Office for the Southern District of New York, the SEC, the CFTC, and the Federal Reserve Board, have investigated or brought suit against certain of the defendants.  Nordlicht is not named nor even mentioned in any of those suits.  *See* Compl. ¶¶ 111-16.

[2]     BMO does not allege that Nordlicht had any part whatsoever in what BMO described as Lee's "fictitious market price quotations" or the so-called "1x2" options trades that Lee used to disguise risk in his own book.  *See* Compl. ¶¶ 23-87, 91-116 (not mentioning Nordlicht).  BMO similarly does not even mention Nordlicht in connection with BMO's claims of fraud (*see id.* ¶¶ 117-34), negligent misrepresentation (¶¶ 135-51), or breach of contract (¶¶ 190-96).

requirements of Federal Rule of Civil Procedure 9(b)"); *Armstrong v. McAlpin*, 699 F.2d 79, 92-93 (2d Cir. 1983) (same); *see also Rosner v. Bank of China*, No. 06 CV 13652, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008) (aiding and abetting fraud requires "the defendant's actual, not constructive, knowledge of the fraud.").  Thus the Complaint must allege facts giving rise to a "strong inference" of "actual knowledge."  *Lerner*, 459 F.3d at 293.

As in *Lerner*, while the Complaint here recites conclusory allegations that Nordlicht knew and substantially assisted Lee's fraud, BMO has "failed to plead facts with the requisite particularity to support that claim."  *Lerner*, 459 F.3d at 293.  The Complaint makes no factual allegations whatsoever that Nordlicht had any awareness whatsoever of Lee's fraud, or assisted it in any way whatsoever.

### A.    BMO Fails to Allege Facts Giving Rise to a Strong Inference That Nordlicht Actually Knew of Lee's Fraud

The Complaint's sole allegation regarding Nordlicht's knowledge of any fraud is, to say the least, wholly conclusory:

> Optionable, Cassidy, O'Connor, and Nordlicht knew that Lee misrepresented to BMO that the EOO trades were legitimate transactions that generated a net profit for BMO.  Optionable, Cassidy, O'Connor, and Nordlicht knew that, in fact, that EOO trades required a net payment of premium by BMO to its counterparties, and that the reason Lee arranged the EOO trades was to conceal the overvaluation of and losses suffered by BMO's natural gas options book.

Compl. ¶ 160.  First, this allegation "clumps" defendants together in a way that violates the particularity standards of Rule 9(b), *see 380544 Canada, Inc. v. Aspen Technology, Inc.*, 544 F. Supp. 2d 199, 218 (S.D.N.Y. 2008).  More crucially, there is no factual allegation that would explain how Nordlicht was supposed to have known that Lee was misrepresenting anything to BMO, or how Nordlicht was supposed to have known that Lee was concealing losses on his book.  There is no allegation that Nordlicht knew of any particular statement that Lee made to

BMO, or to whom at BMO such statement was made, or when it was made, or in what context –

much less that Nordlicht knew that statement was fraudulent when made.  And there is no

allegation that Nordlicht – an outsider to BMO – knew anything about Lee's book, Lee's losses,

or how Lee was valuing his trades.  Such a "legal conclusion couched as a factual allegation"

does not suffice to establish liability even under Rule 8(a), *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949-50 (2009), much less the heightened particularity requirements of Rule 9(b).

The other allegations bearing on Nordlicht similarly shed no light on what, how,

or why Nordlicht was supposed to have known about Lee's fraud.  The Complaint alleges that:

- "Optionable, Cassidy, Nordlicht, and others developed the idea of the EOO trades and presented it to Lee."  Compl. ¶ 88.

- "Optionable, Cassidy, O'Connor, and Nordlicht also connected Lee to a number of counterparties, which entered into EOO trades on terms highly unfavorable to BMO."  Compl. ¶ 89.  One of those counterparties is alleged to have been Platinum Management (NY), LLC, of which Nordlicht is alleged to be the Managing Member.  Compl. ¶ 90.

- "Optionable, Cassidy, O'Connor, and Nordlicht, through Lee, participated in a number of EOO trades with BMO in late 2006 and early 2007, by arranging EOO trades."  Compl. ¶ 159.

These assertions duly recite that Nordlicht participated in proposing a financial transaction to a

major institution, assisted in finding counterparties for that transaction, and that those

transactions were more favorable to the counterparties than they were to BMO.  But they fall far

short of alleging any fraud, much less that Nordlicht had any reason to know it.[3]

There is no allegation that an "exchange of options for options" trade, standing

alone, is illegal or fraudulent.  There is no allegation that it was illegal, or in any way

---

[3]      BMO also alleges that after certain "initial losses were discovered, Optionable, Cassidy, Nordlicht, and Lee continued to conceal their fraudulent transactions, including the EOO trades."  Compl. ¶ 99.  Aside from again impermissibly clumping defendants together, *see 380544 Canada*, 544 F. Supp. 2d at 218, this allegation also is completely devoid of any particularity as to what Nordlicht was supposed to have done to conceal anything, or from whom, or when, etc., or that he had any idea what Lee was doing to conceal anything.

inappropriate, for Nordlicht to connect Lee to counterparties for these presumptively legal trades – even counterparties affiliated with Nordlicht himself.  Indeed, the Complaint asserts no facts suggesting that Nordlicht even made this alleged connection.  There is no allegation that Lee told Nordlicht the transactions were fraudulent.  There is no allegation that Nordlicht ever saw Lee's books, or any other information that would have signaled that the trades were not legitimate. The Complaint does not allege any reason that Nordlicht should have questioned why Lee was entering these EOO trades, or any reason that Nordlicht should have guessed (much less that he actually knew) that Lee was engaged in a simple fraud rather than a legitimate trading strategy.

Even if Nordlicht knew that Lee was taking a loss on his EOO trades – and it is not specifically alleged that he did know that – no facts are alleged that would signal Nordlicht that Lee's losses on those trades were connected to a fraud.  After all, the Complaint concedes that each EOO trade "involved a huge quantity of underlying futures contracts," Compl. ¶ 87, and there is no allegation that Nordlicht knew anything about Lee's trading relating to these futures contracts, or about any other trades apart from the EOO trades.  Nor are there even allegations that Nordlicht encountered "red flags" that would have put him on notice of some impropriety – which allegations alone would not create the required "strong inference of actual knowledge" of Lee's fraud, *cf. Lerner*, 459 F.3d at 293-94.

In short, there is no plausible or particularized allegation of fact that even would have suggested to Nordlicht that Lee, the head of an options trading desk at a major financial institution – an institution with a compliance department, senior oversight personnel, and regulatory oversight – was engaged in a crude fraud rather than a sophisticated and wholly legitimate options trading strategy.  Absent such allegations, BMO has failed to plead the actual knowledge element.

**B.      BMO Fails To Allege that Nordlicht Substantially Assisted Lee's Fraud**

Aiding and abetting fraud also requires substantial assistance, *see Lerner*, 459

F.3d at 292, which in turn requires allegations that the defendant's actions were "a proximate

cause of the primary violation."  *Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983).  Inaction

does not support a claim of substantial assistance, except when "in conscious and reckless

violation of a duty to act," *id.* at 91, and "[a]llegations of a 'but for' causal relationship are

insufficient," *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 63 (2d Cir.

1985).  "Where a defendant owes no fiduciary duty to a plaintiff" – clearly the case here, because

Nordlicht was an outsider to BMO and not alleged to have any duty to BMO – "mere inaction by

the defendant cannot constitute actionable participation in the aiding and abetting claim."

*Fezzani v. Bear, Stearns & Co. Inc.*, 592 F. Supp. 2d 410, 423 (S.D.N.Y. 2008).  "Indeed, if the

defendant has no such fiduciary duty, 'the scienter requirement scales upward – the assistance

rendered should be both substantial and knowing.'"  *Id.,* citing *Ross v. Bolton*, 639 F.Supp. 323,

327 (S.D.N.Y. 1986).

The Complaint is entirely devoid of any non-conclusory allegations that Nordlicht

rendered any assistance or caused any wrongdoing.  The key allegation of substantial assistance

is that "Optionable, Cassidy, O'Connor, and Nordlicht substantially assisted Lee's EOO trading

fraud by arranging the EOO trades with BMO.  The EOO trades assisted Lee in covering up his

fraud because Lee entered the EOO transactions into BMO's system in a manner that concealed

their true valuation, which helped Lee conceal losses from his other positions."  Compl. ¶ 161.[4]

As detailed above, arranging for and participating in legal transactions is hardly assisting a fraud.

And there is no allegation that Nordlicht had any inkling that Lee was entering false valuations

---

[4]      Again, this allegation impermissibly "clumps" defendants together in violation of the particularity
standards of Rule 9(b).  *See 380544 Canada*, 544 F. Supp. 2d at 218.

on BMO's books, or that Nordlicht had any access to any information that would have alerted

him to Lee's wrongdoing.  All that the Complaint alleges is that several defendants (clumped

together with Nordlicht) helped arrange for legal options transactions.  That is hardly a

particularized allegation of Nordlicht's substantial assistance in a fraud.

   The Complaint also alleges that after certain losses were discovered, "Optionable,

Cassidy, Nordlicht, and Lee continued to conceal their fraudulent transactions, including the

EOO trades."  Compl. ¶ 99.  This entirely conclusory allegation fails to specify what Nordlicht

did to "conceal" anything; from whom he was trying to conceal information; under what

circumstances; or even that Nordlicht knew there was any actual fraud going on.  Again, there is

no allegation whatsoever that Nordlicht did anything at all, much less anything "substantial," to

assist, much less be the proximate cause of, Lee's fraud.

## II.  BMO FAILS TO STATE A CLAIM AGAINST NORDLICHT FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY

   Similar to aiding and abetting fraud, a claim under New York common law for

aiding and abetting a breach of fiduciary duty requires both actual knowledge (not merely

constructive knowledge) of the breach, and also knowing participation in that breach.  *See*

*Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996); *Kaufman v. Cohen,* 760

N.Y.S.2d 157, 169 (1st Dep't 2003).  A plaintiff must allege "actual knowledge" as to both the

"primary violator's fiduciary status and that the primary violator acted in contravention of that

duty." *Mazzaro de Abreu v. Bank of America Corp.*, 525 F. Supp. 2d 381, 394 (S.D.N.Y. 2007),

*citing Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688

(WHP), 2003 WL 22218643, at *9 (S.D.N.Y. Sept. 25, 2003).  In addition, a plaintiff must allege

that defendant provided "substantial assistance to the primary violator … [which] occurs when a

defendant affirmatively assists, helps to conceal or fails to act when required to do so, thereby

enabling the breach to occur." *Kaufman*, 760 N.Y.S.2d at 170.  "[T]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *Id.* at 126.

In addition, to the extent the allegations of the underlying breach of duty are based on fraud, the allegations of aiding and abetting must meet the particularity requirements of Rule 9(b).  *See Kolbeck*, 939 F. Supp. at 245, citing *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 847-48 (2d Cir. 1987); *see also Mazzaro de Abreu*, 525 F. Supp. 2d at 393.  Here, BMO's allegations relating to Nordlicht's purported role in Lee's breach of fiduciary duty are **identical** to the allegations for aiding and abetting fraud – verbatim.  Compare Compl. ¶¶ 159-66 with Compl. ¶¶ 182-89.  Thus, the heightened standard of Rule 9(b) applies here as well.  But even under a Rule 8(a) analysis, BMO fails to allege that Nordlicht knew of, or participated in, any breach of fiduciary duty by BMO employees.

BMO conclusorily alleges that Optionable, Cassidy, O'Connor, and Nordlicht participated, through Lee, in arranging EOO trades with BMO (Compl. ¶ 182); "knew that Lee misrepresented to BMO that the EOO trades were legitimate transactions that generated a net profit for BMO" (*id.* ¶ 183); "knew that … the reason Lee arranged the EOO trades was to conceal the overvaluation of and losses suffered by [Lee]" (*id.*); and "substantially assisted with Lee's breaches of fiduciary duty by arranging the EOO trades with BMO" (*id.* ¶ 184).

For reasons similar to those detailed in Section I above, such a conclusory recitation of the elements does not raise any inference that Nordlicht had any actual knowledge that Lee or Moore breached any duty they may have owed to BMO.  *See Global Mins. & Metals v. Holme*, 824 N.Y.S.2d 210 (1st Dep't 2006) (plaintiff may not merely rely on conclusory and sparse allegations that the aider or abettor knew about the primary breach of fiduciary duty);

*Kramer v. Lockwood Pension Servs., Inc.*, ___ F. Supp. 2d ___, 2009 WL 2878100, at *18 (S.D.N.Y. Sept. 1, 2009) (dismissing aiding and abetting breach of fiduciary duty claim where conclusory allegations that a defendant knew of a fiduciary duty or a breach thereof failed to meet the *Iqbal* standard of pleading).  And also for reasons similar to those detailed above, the Complaint also lacks any non-conclusory allegation that Nordlicht did anything to substantially assist in any of Lee's or Moore's wrongdoing.[5]

## **CONCLUSION**

For the reasons stated above, the Complaint against Nordlicht should be dismissed with prejudice.

Dated:  New York, New York
          December 7, 2009

                              CURTIS, MALLET-PREVOST,
                               COLT & MOSLE LLP


                              By:    /s/ Eliot Lauer
                                     Eliot Lauer
                                     Jason Gottlieb
                                     Rachael R. Yocum
                              101 Park Avenue
                              New York, New York  10178-0061
                              Tel:  (212) 696-6000
                              Fax:  (212) 697-1559

                              *Attorneys for Defendant Mark Nordlicht*

---

[5]      The Complaint does not even adequately allege that Lee or Moore even owed any fiduciary duties to BMO in the first place, outside of the conclusory assertion that "as employees of BMO, Lee and Moore owed fiduciary duties to BMO." Compl. ¶ 169.  New York law is clear that no fiduciary duties exist between an employer and an at-will employee absent that duty arising out of some other relationship (contractual or otherwise).  *See, e.g.*, *Schenkman v. N.Y. Coll. of Health Professionals*, 29 A.D.3d 671, 672 (2d Dep't 2006); *Vitale v. Steinberg*, 307 A.D.2d 107, 109-10 (1st Dep't 2003); *Ingle v. Glamore Motor Sales*, 140 A.D.2d 493, 494 (2d Dep't 1988), *aff'd* 73 N.Y.2d 183 (1989).  There is no factual allegation that Nordlicht **actually knew** that Lee and Moore had any fiduciary duties; dismissal of this count is appropriate on this point alone.  *See Mazzaro de Abreu*, 525 F. Supp. 2d at 394 (dismissing aiding and abetting breach of fiduciary duty claim where plaintiffs failed to properly allege that defendants had actual knowledge that a wrongdoer had a fiduciary duty with respect to plaintiffs).