### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| **BANK OF MONTREAL,** | : | |
| | : | |
| **Plaintiff,** | : | **No. 09-CV-07557 (GBD)** |
| | : | |
| **-against-** | : | **ECF FILED** |
| | : | |
| **OPTIONABLE, INC., MF GLOBAL INC.,** | : | **ORAL ARGUMENT REQUESTED** |
| **KEVIN P. CASSIDY, EDWARD J.** | : | |
| **O'CONNOR, MARK A. NORDLICHT,** | : | |
| **RYAN B. WOODGATE, SCOTT CONNOR** | : | |
| **and JOSEPH D. SAAB,** | : | |
| | : | |
| **Defendants.** | : | |

### DEFENDANT EDWARD J. O'CONNOR'S MEMORANDUM OF LAW
### IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT

**McCormick & O'Brien, LLP**

**Liam O'Brien**
**Marni Rae Robin**
**9 East 40th Street, 4th Floor**
**New York, New York 10016**
**Tel: (212) 286-4471**
**Fax: (212) 504-9574**

*Attorneys for Edward J. O'Connor*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

RELEVANT FACTUAL ALLEGATIONS................................................................................2

    I.   Overview of the Allegations Pertaining to O'Connor ..........................................................2

        A.  The Purportedly Circular Price Quotations.................................................................3

        B.  Lee's EOO Trades.......................................................................................................5

        C.  The Fallout of the Purported Fraud..............................................................................6

ARGUMENT ................................................................................................................................7

    I.   The Complaint Fails to Adequately Plead the Claims against O'Connor that Sound in Fraud Pursuant to Rule 9(b) ..............................................................................................................8

        A.  The Claim of Common Law Fraud against O'Connor is not Pled with Requisite Particularity.....................................................................................................................8

            1.  The Complaint Fails to Adequately Plead a Material Misstatement of Fact ........8

            2.  The Complaint Fails to Adequately Plead O'Connor's *Scienter* ........................10

            3.  The Complaint Fails to Adequately Plead BMO's Reasonable Reliance...........13

            4.  The Complaint Fails to Adequately Plead BMO's Injury was Proximately Caused by O'Connor's Alleged Misstatements ..................................................15

        B.  The Claim of Negligent Misrepresentation against O'Connor is not Adequately Pled ..........................................................................................................................15

            1.  The Complaint Fails to Adequately Plead a Special Relationship Between BMO and O'Connor....................................................................................................16

            2.  The Complaint Fails to Adequately Plead a False Representation ....................18

            3.  The Complaint Fails to Adequately Plead BMO's Reasonable Reliance...........18

        C.  BMO Fails to Allege its Claim against O'Connor for Aiding and Abetting Lee's Fraud with Requisite Particularity Pursuant to Rule 9(b).........................................19

            1.  The Complaint Fails to Adequately Allege O'Connor's Actual Knowledge .....19

            2.  The Complaint Fails to Adequately Allege O'Connor's Substantial Participation ......................................................................................................21

    D. BMO Fails to Allege its Claim against O'Connor for Aiding and Abetting Lee's Breach of Fiduciary Duty with Requisite Particularity Pursuant to Rule 9(b) .........22

        1. The Complaint Fails to Adequately Allege O'Connor's Actual Knowledge .....23

        2. The Complaint Fails to Adequately Allege O'Connor's Substantial Participation ...........................................................................................................24

II. In the Alternative, the Claims of Negligent Misrepresentation and Aiding and Abetting a Breach of Fiduciary Duty against O'Connor Must be Dismissed as Time Barred under New York law......................................................................................................................................24

**CONCLUSION** ..........................................................................................................................**26**

## **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) ..................................................................7, 9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87 (2d Cir. 2007) ............................8, 20, 21

*Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank,* 57 F.3d 146 (2d Cir. 1995)..........................................................................................8, 16

*Colon v. Banco Popular N.A.,* 59 A.D.3d 300, 874 N.Y.S.2d 44 (1st Dep't 2009) ......................25

*DeBlasio v. Merrill Lynch & Co., Inc.,* No. 07 Civ. 318 (RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ....................................................................................................16, 17

*De Kwiatkowski v. Bear, Stearns & Co., Inc.,* 306 F.3d 1293 (2d Cir. 2002) ..............................17

*Fandy Corp. v. Lung-Fong Chen,* 262 A.S.2d 352, 691 N.Y.S.2d 572 (2d Dep't 1999)..............25

*Filler v. Hanvit Bank,* 339 F.Supp.2d 553 (S.D.N.Y. 2004)....................................................19, 21

*Filler v. Hanvit Bank,* 156 Fed.Appx. 413, 2005 WL 3270944 (2d Cir. 2005)............................19

*Frota v. Prudential-Bache Sec.,* 639 F.Supp. 1186 (S.D.N.Y. 1986)............................................22

*IDT Corp. v. Morgan Stanley Dean Witter & Co.,* 12 N.Y.3d 132, 879 N.Y.S.2d 355 (2009).....25

*In re IMAX Sec. Litig.,* 587 F.Supp.2d 471 (S.D.N.Y. 2008) ......................................................11

*In re NovaGold Resources Inc. Sec. Litig.,* 629 F.Supp.2d 272 (S.D.N.Y. 2009)........................11

*In re NYSE Specialists Sec. Litig.,* 503 F.3d 89 (2d Cir. 2007) ......................................................7

*In re Sharp International Corp.,* 403 F.3d 43 (2d Cir. 2005)..................................................22, 24

*JP Morgan Chase Bank v. Winnick,* 350 F.Supp.2d 393 (S.D.N.Y. 2004) ............................13, 14

*Kalnit v. Eichler,* 264 F.3d 131 (2d Cir. 2001) ....................................................................10, 11

*Kolbeck v. LIT America,* 939 F.Supp. 240 (S.D.N.Y. 1996) ........................................................22

*Lerner v. Fleet Bank, N.A.,* 459 F.3d 273 (2d Cir. 2006) ............................................................20

*Maalouf v. Salomon Smith Barney, Inc.,* No. 02 Civ. 4770 (SAS), 2003 WL 1858153 (S.D.N.Y. April 10, 2003)..........................................................................................18

*Madison Capital Company, LLC v. Alasia, LLC,* 615 F.Supp.2d 233 (S.D.N.Y. 2009)..............16

*Meisel v. Grunberg,* __ F.Supp. __, 2009 WL 2777165 (S.D.N.Y. 2009) ............10, 16, 18, 23, 24

*Mills v. Polar Molecular Corp.,* 12 F.3d 1170 (2d Cir. 1993) ....................................................8, 9

*Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.,* __ F.R.D. __, 2009 WL
    860635 (S.D.N.Y. 2009) ......................................................................................................11

*Novak v. Kasaks,* 216 F.3d 300 (2d Cir. 2000) ............................................................................12

*OSRecovery, Inc. v. One Groupe Int'l, Inc.,* 354 F.Supp.2d 357 (S.D.N.Y. 2005) ......................21

*Pathfinder Management, Inc. v. Mayne Pharma, Inc.,* Civil Action No. 06-2204 (WJM), 2009
    WL 4250061 (D.N.J. Nov. 25, 2009) ..................................................................................11

*PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.,* No. 99 Civ 3794 (BSJ), 2003 WL
    22118977 (S.D.N.Y. September 11, 2003) ...........................................................................18

*Rombach v. Chang,* 355 F.3d 164 (2d Cir. 2004) ...........................................................................8

*Schlissel v. Subramanian,* 25 Misc.3d 1219(A), 2009 WL 3465948
    (Sup. Ct. Kings Co. 2009)....................................................................................................25

*Shields v. Citytrust Bancorp., Inc.,* 25 F.3d 1124 (2d Cir. 1994) ...........................................10, 11

*Spain v. Deutsche Bank,* No. 08 Civ. 10809 (LBS), 2009 WL 3073349 (S.D.N.Y. September 18,
    2009) ...................................................................................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499 (2007) ....................10

*Thacker v. Medaphis Corp.,* No. Civ. 2849 (DAB), 1998 WL 684595 (S.D.N.Y. September 30,
    1998) ...................................................................................................................................11

*Thomas H. Lee Equity Fund v. Grant Thornton LLP,* 586 F.Supp.2d 119 (S.D.N.Y. 2008) ........19

*Williams v. Sidley Austin Brown & Wood,* 15 Misc.3d 1125(A), 2007 WL 1203594 (Sup. Ct.
    N.Y. Co. 2007)....................................................................................................................25

**Statutes**

Fed.R.Civ.P. 8(a)(2) ........................................................................................1, 2, 7, 16, 26

Fed.R.Civ.P. 9(b) ......................................................................................................... Passim

Fed.R.Civ.P. 12(b)(6)......................................................................................1, 2, 7, 16, 26

N.Y. C.P.L.R. § 214(4)..........................................................................................................25

Defendant Edward O'Connor ("O'Connor") respectfully submits this Memorandum of Law in support of his motion to dismiss the Complaint ("Complaint" or "Cpt.") against him by Plaintiff Bank of Montreal ("BMO" or "Plaintiff") pursuant to Federal Rules of Civil Procedure ("Rules") 8(a)(2), 9(b) and 12(b)(6).

## PRELIMINARY STATEMENT

BMO alleges various common law claims against O'Connor, either directly or as an aider and abettor, arising out of an alleged scheme by the Defendants to defraud BMO. BMO claims that O'Connor acted in collusion with former BMO employees, David Lee ("Lee") and Robert Moore ("Moore"). Neither Lee nor Moore are named as Defendants in the Complaint. BMO further alleges that O'Connor acted in his capacity as a former officer and a director of co-Defendant Optionable, Inc. ("Optionable") and as a former director or managing director of Capital Energy Services, LLC f/k/a Orion Energy Services, LLC ("Capital").

Specifically, Plaintiff asserts the following claims against O'Connor: (i) a direct claim for common law fraud based upon alleged misrepresentations concerning price quotations made to BMO and alleged misrepresentations concerning Optionable's prominence in the natural gas markets; (ii) a direct claim for negligent misrepresentation for the same allegedly fraudulent misrepresentations made to BMO; (iii) an indirect claim of aiding and abetting the allegedly fraudulent conduct committed by Lee against BMO; and (iv) an indirect claim of aiding and abetting Lee's alleged breach of his fiduciary duties to BMO. The claims against O'Connor should be dismissed for the reasons set forth below and in the memoranda of law submitted by the co-Defendants, which are adopted and incorporated herein by O'Connor as they apply to him.

O'Connor respectfully requests that the Court grant an order dismissing the claims against O'Connor in their entirety pursuant to Rules 8(a)(2), 9(b) and 12 (b)(6).

## RELEVANT FACTUAL ALLEGATIONS

The following factual allegations from the Complaint pertain only to the claims against O'Connor and are presumed to be true solely for the purposes of this motion.[1]

## I.   Overview of the Allegations Pertaining to O'Connor

In the Complaint, Plaintiff alleges that Lee, BMO's former head trader of natural gas options, colluded with O'Connor, Optionable and the other Optionable-affiliated defendants (collectively, the "Optionable Defendants") to conceal large losses caused by Lee's trading strategies. Cpt. ¶ 1. Optionable provided brokerage services to BMO's commodity derivative traders from 2003 through early May 2007. During 2005 and 2006, BMO was Optionable's largest client.  Cpt. ¶¶ 25, 56.  This alleged scheme to defraud BMO purportedly resulted in millions of dollars in losses to the Plaintiff.  Cpt. ¶ 3.  According to the Complaint, O'Connor and other Optionable Defendants, engaged in this alleged scheme to defraud BMO in order (a) to enhance Optionable's apparent success and financial benefit by generating millions of dollars in commissions and other revenue from trades by Lee on behalf of BMO, and (b) to gain personal financial benefits through the sale of O'Connor's and others' shares of Optionable stock to the New York Mercantile Exchange ("NYMEX") for a total of Twenty-Nine Million Dollars ($29,000,000). Cpt. ¶¶ 2, 185.

The Complaint further alleges that O'Connor participated in the scheme to defraud BMO: (i) by providing to BMO price quotations that O'Connor received from Lee which were purported to be independent market prices and were used by BMO to verify Lee's marks in his

---

[1] There are numerous allegations made in the Complaint that do not relate to O'Connor's alleged conduct or the claims alleged against him, and therefore, are not addressed herein.

natural gas options book;[2] and (ii) by "brokering" through Capital Lee's exchange of options for options ("EOO") trades thereby enabling Lee to record large artificial profits and further conceal his trading losses from BMO.  Cpt. ¶¶ 1, 24, 27, 36, 82, 87, 88, 89 and 92.

### A.     The Purportedly Circular Price Quotations

According to the Complaint, Lee would value daily the positions he took in BMO's book of natural gas options. Cpt. ¶ 21.  BMO valued Lee's natural gas options book by requiring Lee to use his judgment for data inputs not readily available from public information.  Cpt. ¶ 23. Additionally, Plaintiff alleges that BMO's Market Risk department twice monthly valued a representative sample of trades in Lee's book, independent of Lee's marks through a process called Independent Price Verification ("IPV"). Curiously, the Complaint does not explain how the IPV process was supposed to work. BMO implies, however, that the IPV process was not properly followed.

The Complaint does not state that BMO requested independent market quotes from any of the Optionable Defendants. This glaring omission notwithstanding, the Plaintiff asserts that it believed that BMO was receiving independent price quotes from third parties, including O'Connor and certain other Optionable Defendants. Cpt. ¶¶ 24, 27.  BMO alleges that Lee communicated to certain Optionable Defendants price quotes for particular options that Lee wanted Optionable to provide to BMO Market Risk personnel as purportedly independent prices. Cpt. ¶ 29.

According to the Complaint, at month end, Lee would email prices in spreadsheets and other documents to a particular Optionable Defendant, who, after emailing the same quotes back to Lee for Lee's approval, would then email the option prices, unchanged or virtually unchanged,

---

[2] This allegation is denoted in the Complaint as "circular price quotations." *See, e.g.,* Cpt. ¶ 35.

as purportedly "independent" prices to BMO's employees responsible for the IPV process and to Lee.[3]  Cpt. ¶¶ 29-30.  Specifically, Plaintiff alleges that on May 31, 2005, O'Connor received pipeline volatility reports and price quotations by email from Lee and then re-circulated them to BMO (and Lee), as described above, as a purportedly independent assessment.  Cpt. ¶ 36.  The Complaint asserts that the allegedly re-circulated price quotes from Lee to Optionable were "generally" more favorable than actual market prices, thereby allowing Lee to overstate the value of his natural gas options positions, to create fictitious profits for BMO (and thereby, bonuses and other additional compensation for Lee) and to conceal losses in Lee's book. Cpt. ¶¶ 37, 42.

BMO's Market Risk department recommended in late 2005 that BMO subscribe to a multi-contributor service in order to independently verify Lee's marks. However, it was not until September 2006 that BMO subscribed to the Totem RealMarks ("Totem") multi-contributor service for Plaintiff's IPV process. Cpt. ¶¶ 65, 70.  Totem's quotes purportedly were the results of averaging the price quotes it received from Totem's subscribers, including some of "the most significant participants in the natural gas options trading markets."  Cpt. ¶¶ 66-67.  In early October 2006, Plaintiff allegedly first learned of the large discrepancy between Lee's valuation of his natural gas book and the valuation using Totem's quotes.  Cpt. ¶ 71.  Despite BMO's awareness of the alleged price discrepancy as early as October 2006, it did not use the price quotes from Totem and/or other multi-contributor platforms in the IPV process until April 2007.  Cpt. ¶ 96.  BMO's alleged reliance on Lee's quotes, purportedly verified by Optionable, generated significantly greater profits for BMO than it would have using Totem's multi-contributor quotes.  *See* Cpt. ¶ 38.

---

[3] If BMO truly wanted price verification independent of Lee, then BMO's market risk personnel could have (and should have) put controls in place to exclude Lee from the IPV process.

Also, according to the Complaint, in late 2006, BMO discussed the possibility of obtaining specific market information based on actual market quotes from Optionable. Optionable would derive this information from a newly created options trading platform, that would eventually be called OPEX Analytics RealMarks ("OPEX"). The negotiations culminated in a signed agreement on February 23, 2007. Cpt. ¶¶ 73-77. Significantly, O'Connor is <u>not</u> alleged to have participated in the OPEX negotiations or operations.

In April 2007, Lee allegedly re-marked his book (still with substantially off-market values) resulting in a 70 million dollar ($70,000,000) loss for BMO. On April 27, 2009, BMO allegedly announced projected pre-tax losses of between 350 million to 450 million Canadian dollars (CDN $350,000,000 to CDN $450,000,000). Cpt. ¶ 98.

**B.     Lee's EOO Trades**

In the Fall of 2006, Lee's trading strategies allegedly resulted in increasingly larger losses to BMO's book of natural gas options.  Cpt. ¶ 82.  Beginning in October 2006, Lee allegedly executed EOO trades to cover his losses by recording large artificial profits for BMO from these trades through early March 2007. The Complaint alleges that, in reality, these EOO trades caused BMO to lose hundreds of millions of dollars.  Cpt. ¶¶ 82, 87.  According to the Plaintiff, Lee's EOO trades enabled Lee (by his manipulated entries in BMO's systems) to mask the mounting losses in his natural gas book, generated millions of dollars in commissions and fees for Optionable, and allowed the Optionable Defendants to continue to hide their fraud from BMO. Cpt. ¶¶ 91-92.

O'Connor and certain other Optionable Defendants allegedly participated in Lee's EOO transactions by "connecting" Lee to counterparties including those that were allegedly affiliated with, or implicitly friendly to, another Optionable Defendant.  Cpt. ¶ 89.  Capital, a firm with

which O'Connor and another Optionable Defendant was associated, allegedly acted as the broker on nearly all of Lee's EOO trades, with all commissions and fees generated going to Optionable. Cpt. ¶¶ 88, 91.   O'Connor is <u>not</u> alleged to have acted as the broker for BMO or for the counterparties affiliated with or friendly to another Optionable Defendant on the EOO trades. Nor is O'Connor alleged to having received <u>any</u> commissions as a result of the EOO transactions.

In May 2007, BMO executives and traders examining the Commodity Group's books allegedly discovered Lee's EOO trades and BMO's counterparties' connections to Optionable and determined that the trades were overvalued. Cpt. ¶ 101. This discovery purportedly forced BMO to recalculate its estimated losses, and on May 17, 2009, BMO announced a projected pre-tax loss of 680 million Canadian dollars (CDN $680,000,000). Cpt. ¶¶ 101, 106.

### C.    The Fallout of the Purported Fraud

In early May, Lee (and Moore, the head of BMO's Commodity Group) allegedly were placed on leaves of absence; Lee allegedly resigned approximately two weeks later and BMO allegedly terminated Moore's employment shortly thereafter. Cpt. ¶¶ 102, 115.  On May 8, BMO announced that it ceased doing business with Optionable, and several days later, co-Defendant Kevin P. Cassidy ("Cassidy") is alleged to have resigned as CEO of Optionable. Cpt. ¶¶ 103, 104. Finally, a number of government investigations ensued resulting in state and federal convictions against Lee by guilty pleas, a consent order against Lee issued by the Federal Reserve Board, a federal indictment against Cassidy, and civil litigations initiated by the SEC and/or the CFTC against most of the Optionable Defendants, including O'Connor.  Cpt. ¶¶ 111-116.

## **ARGUMENT**

In their various memoranda, the co-Defendants set forth arguments in support of the dismissal of the Complaint pursuant to Rules 8(a)(2), 9(b) and 12(b)(6). We hereby adopt the relevant arguments and authorities therein as if they were fully set forth herein.

In order to survive a motion to dismiss, "the complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court is constrained to accept as true all factual allegations asserted in the Complaint (although O'Connor disputes many of them), the Court need only draw reasonable inferences in Plaintiff's favor, and is <u>not</u> required to afford "[l]egal conclusions, deductions or opinions couched as factual allegations… a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir. 2007). Pursuant to Rule 8, pleadings must contain allegations that are "more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft,* 129 S.Ct. at 1949.

 "[W]here the well-pleaded facts do not permit the court to infer more than the mere <u>possibility</u> of misconduct, the complaint has alleged - but it has not 'shown that the pleader is entitled to relief.'" *Ashcroft,* 129 S.Ct. at 1950 (quoting Rule 8(a)(2)) (emphasis added). As demonstrated below, the Complaint is replete with conclusory allegations against O'Connor concerning his conduct and his purported knowledge. Moreover, the non-conclusory allegations in support of Plaintiff's claims against O'Connor are few and insufficient to support the claims alleged by BMO.

## I.     The Complaint Fails to Adequately Plead the Claims against O'Connor that Sound in Fraud Pursuant to Rule 9(b)

Each of the causes of action against O'Connor is predicated on allegations of fraud. Therefore, the heightened pleading standard of Rule 9(b) applies to each of the claims for (i) common law fraud; (ii) negligent misrepresentation; (iii) aiding and abetting fraud; and (iv) aiding and abetting breach of fiduciary duty. *Rombach v. Chang,* 355 F.3d 164, 167 (2d Cir. 2004) ("Rule 9(b) applies when the claim sounds in fraud."). Rule 9(b) requires the Plaintiff to allege "with particularity" the circumstances constituting the alleged fraud. Fed.R.Civ.P. 9(b).

### A.     The Claim of Common Law Fraud against O'Connor is not Pled with Requisite Particularity

To state a claim for common law fraud under New York law, the Plaintiff must plead that (1) O'Connor made a material false representation; (2) O'Connor intended to defraud Plaintiff thereby; (3) the Plaintiff reasonably relied upon the misrepresentation; and (4) the Plaintiff suffered damage as a result of such reliance. *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank,* 57 F.3d 146, 153 (2d Cir. 1995). As set forth above, each of these elements must be pled with particularity pursuant to Rule 9(b). Allegations that are conclusory or unsupported by factual assertions are insufficient. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007) (citing *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir. 1986)).

#### 1.     The Complaint Fails to Adequately Plead a Material Misstatement of Fact

BMO has failed to allege with requisite particularity that O'Connor made a material misstatement of fact. Where the alleged fraud is based upon material misstatements of fact, Rule 9(b) requires the Complaint to "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170,

1175 (2d Cir. 1993). The Plaintiff has failed to satisfy these pleading requirements without resorting to conclusory allegations against O'Connor. "[P]leadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft,* 129 S.Ct. at 1950.

Count I of the Complaint alleges that O'Connor knowingly, intentionally or recklessly misrepresented to BMO that the price quotes he allegedly provided to BMO were independent quotes representing actual market values, when he knew or recklessly disregarded that Lee created the quotes rather than the quotes having come from the market. Cpt. ¶¶ 118-119. In support of this allegation, the Plaintiff describes generically how the purported "circular price quotation" scheme worked and then simply identifies by time emails allegedly sent on May 31, 2005 by Lee to O'Connor and by O'Connor to the BMO personnel and Lee. *See* Cpt. ¶¶ 29-30, 36. However, BMO fails to specify any alleged statement made by <u>O'Connor to BMO</u> or by <u>BMO to O'Connor</u> that would support Plaintiff's conclusory allegations that O'Connor "provided BMO with supposedly independent prices to value some of its natural gas options as part of the IPV process" (Cpt. ¶ 26) or that "O'Connor … [was] aware that BMO relied on these price quotations to conduct the IPV process for its natural gas options book" (Cpt. ¶ 27).

BMO also alleges in Count I that O'Connor:

> knowingly and intentionally misled BMO about <u>Optionable's prominence in the natural gas markets</u>, with the intent that BMO rely on those misrepresentations and continue to use Optionable's brokerage and data market services, and increase the volume of BMO's trades cleared through NYMEX, for which Optionable received compensation from NYMEX.

Cpt. ¶ 127 (emphasis added). The Complaint is devoid of <u>any</u> factual allegations to support this claim. There are absolutely no allegations in the Complaint setting forth when or where this alleged communication occurred, the substance of the communication, or how the

communication was fraudulent. Therefore, Plaintiff has failed to adequately plead material misstatements made by O'Connor with the requisite specificity required by Rule 9(b).

2.     The Complaint Fails to Adequately Plead O'Connor's *Scienter*

Pursuant to Rule 9(b), "although intent to defraud may be averred generally, [a] plaintiff must allege facts giving rise to a 'strong inference' of fraudulent intent. *Meisel v. Grunberg,* __ F.Supp. __, 2009 WL 2777165, at * 5 (S.D.N.Y. 2009) (citing *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990).  "The requisite 'strong inference' of *scienter* may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp., Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994). For an inference of *scienter* to be strong, "a reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499, 2510 (2007). Moreover, a pleading technique that couples a factual statement with a conclusory allegation of fraudulent intent is inadequate. *See Shields,* 25 F.3d at 1129. Such a technique is used here in an attempt to establish O'Connor's *scienter.  See e.g.,* Cpt. ¶¶ 27, 118, 119, 123, 124, 127, 134.

The Complaint may be read to allege that O'Connor's motive to commit the alleged fraud is two-fold: (i) to increase BMO's business through Lee with Optionable to enable Optionable to earn greater revenue from BMO and others from the same trades (Cpt. ¶¶ 2, 60); and (ii) to make Optionable appear to be a successful, growing business in order to enable O'Connor and other Optionable Defendants to sell their shares of Optionable to NYMEX (Cpt. ¶¶ 2, 42). Not only is the first possible motive not specifically alleged as against O'Connor, it is not a sufficient motive for O'Connor's alleged misconduct. Motives that are generally possessed by most corporate directors and officers do not suffice. *Kalnit v. Eichler,* 264 F.3d 131, 139 (2d Cir. 2001). The

desire to increase business and revenues is clearly a motive that is generally possessed by most corporate officers and directors, and therefore, such a motive alone will not suffice. *See Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.,* __ F.R.D. __, 2009 WL 860635, at *7 (S.D.N.Y. 2009) ("[t]he desire to attract business alone is not enough."). *See also, Kalnit,* 264 F.3d at 139 (the desire for a corporation to appear profitable is an insufficient motive to support an inference of fraudulent intent); *In re NovaGold Resources Inc. Sec. Litig.,* 629 F.Supp.2d 272, 297 (S.D.N.Y. 2009) (charging excessive fees on a transaction to maximize profits does not ordinarily constitute a motive to defraud); *Pathfinder Management, Inc. v. Mayne Pharma, Inc.,* Civil Action No. 06-2204 (WJM), 2009 WL 4250061, at *8 (D.N.J. Nov. 25, 2009) (holding that a desire to maximize profits and minimize losses is a motive that any corporate officer would share). *See generally, Thacker v. Medaphis Corp.,* No. Civ. 2849 (DAB), 1998 WL 684595, at * 3 (S.D.N.Y. Sept. 30, 1998) (finding plaintiff's claim that defendant was motivated by a desire to eliminate competitors and to acquire related companies insufficient to plead scienter because such motive could be imputed to any corporate officer).

Moreover, the Complaint does not make any allegations that support the inference that O'Connor achieved a concrete and personal benefit from his alleged fraud on BMO. "Motive would entail concrete benefits that could be realized by one or more of the false statements … alleged." *Shields,* 25 F.3d at 1130. The only personal benefit to O'Connor specifically alleged in the Complaint is the proceeds from his sale of Optionable shares to the NYMEX on April 10, 2007. *See* Cpt. ¶ 162 (in Count III for Aiding and Abetting Fraud). This "benefit" O'Connor received in April 2007, however, is not alleged to have any direct correlation to O'Connor's alleged participation in the purported fraud on May 31, 2005. Morever, O'Connor's sale of his Optionable stock to NYMEX two years after his alleged misconduct fails to adequately

11

demonstrate O'Connor's motive or a concrete benefit from his alleged misconduct. It would be farcical to suggest that O'Connor engaged in the sparse conduct alleged in the Complaint with a view that two years later he would be able to benefit from such conduct from a sale of his stock in 2007 – a sale that was not contemplated or even possible two years earlier. *See In re IMAX Sec. Litig.,* 587 F.Supp.2d 471, 480 (S.D.N.Y. 2008) ("While we would hesitate to find the allegations of motive sufficient even if the complaint had alleged that an acquisition was not just probable, but imminent, the fact that IMAX was merely in the exploratory phase of pursuing an acquisition only highlights the speculative and conclusory nature of any concrete benefit that could have been realized by [the defendants]"). Thus, the Complaint fails to allege a plausible motive by O'Connor for his purported participation in the alleged fraud.

Likewise, the Complaint fails to allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness by O'Connor. Conscious misbehavior "encompasses deliberate illegal behavior." *Novak v. Kasaks,* 216 F.3d 300, 308 (2d Cir. 2000). None has been alleged against O'Connor in the Complaint. Whereas, for recklessness, Plaintiff must allege conduct by O'Connor "which is highly unreasonable and which represents an extreme departure from the standards of ordinary care … to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* (internal quotations omitted). Indeed, the Complaint fails to allege <u>specific</u> <u>facts</u> demonstrating that: (1) O'Connor was aware that Lee allegedly had been inflating the values he assigned to his book of natural gas options; (2) O'Connor was informed by BMO or anyone else that BMO expected O'Connor to seek independent marketplace price quotes rather than simply review the valuations provided by Lee for errors based on O'Connor's knowledge of the market at the time; and (3) that O'Connor communicated to BMO that his price quotes were based on independent prices that he observed

in the market. Such allegations would be necessary to show O'Connor's recklessness by circumstantial evidence under the alleged circumstances. Therefore, the Complaint fails to sufficiently allege allegations that would support O'Connor's fraudulent intent.

3.     The Complaint Fails to Adequately Plead BMO's Reasonable Reliance

The third element of common law fraud that must be pled with particularity under Rule 9(b) is justifiable reliance -- did the Plaintiff justifiably rely upon O'Connor's alleged misrepresentations? In order to determine whether Plaintiff's purported reliance on the alleged misrepresentations was justifiable or reasonable,[4] the court must take a "contextual view, focusing on the level of sophistication of the parties, the relationship between them, and the information available at the time of the operative decision." *JP Morgan Chase Bank,* 350 F.Supp.2d at 406.

Plaintiff's alleged reliance upon a purported misstatement by O'Connor, that the price quotations he provided to BMO on May 31, 2005 were independent market prices, is entirely unreasonable for a number of reasons. As demonstrated above, there are no factual allegations made to support a contention that O'Connor made a misstatement to BMO, nor is O'Connor alleged to have received any direction directly from BMO that the price quotations were expected to be O'Connor's independent views of the market. Accordingly, Plaintiff's purported reliance must be based upon an inference of some conduct by O'Connor that the price quotations were his independent views of the market. However, none is alleged against O'Connor.

Moreover, BMO's alleged conduct belies any claim of reasonable reliance.  First, the allegation that BMO began negotiating with Optionable in mid-to-late 2006 for independent

---

[4] The courts' usage of "justifiable reliance" and "reasonable reliance" as an element of common law fraud appears to be interchangeable, and therefore, the standard for such reliance is the same. *See JP Morgan Chase Bank v. Winnick,* 350 F.Supp.2d 393, 405 (S.D.N.Y. 2004).

market price quotes through OPEX, clearly reveals BMO's understanding that Optionable was <u>not</u>, in fact, providing independent market quotes prior to that time. Second, the two emails identified in the Complaint that arguably request confirmation of market prices (Cpt. ¶¶ 27(b), (c)): (i) are <u>not</u> addressed to O'Connor; (ii) are <u>not</u> alleged to have been shown to O'Connor; (iii) it is not alleged that O'Connor was informed of the content of these emails; and (iv) the emails were allegedly sent by BMO employees approximately one year or more <u>after</u> O'Connor's purportedly transmitted independent market quotes. Third, BMO admits to receipt of multi-contributor quotes from Totem – <u>which BMO paid for</u> – that allegedly revealed substantial discrepancies between Lee's valuations (allegedly using price quotes confirmed by Optionable) and valuations using purportedly "independent market prices" as early as the beginning of October 2006.[5]  Cpt. ¶¶ 65-71.  Despite this information, BMO made a <u>calculated business decision</u> to rely upon the valuations provided by Lee that enabled BMO to obtain greater profits for <u>seven more months</u>.

      As set forth in the Complaint, Plaintiff is a Canadian bank that serves "a broad range of personal, commercial, corporate and institutional customers" through its four operating groups: Personal and Commercial Banking Canada, Personal and Commercial Banking U.S., Private Client Group and BMO Capital Markets. Cpt ¶ 4. BMO is clearly a sophisticated party. "[W]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *JP Morgan Chase Bank,* 350 F.Supp.2d at 406 (internal quotation marks and citations omitted). As demonstrated above, Plaintiff's claimed reasonable reliance rings hollow. Plaintiff has failed to adequately allege this element pursuant to Rule 9(b) as well.

---

[5] BMO also asserts its knowledge of market prices quoted by "other market participants" as early as <u>August 2006</u> without identifying the source of such prices. *See* Cpt. ¶¶ 37 – 40.

4.   The Complaint Fails to Adequately Plead BMO's Injury was Proximately Caused by O'Connor's Alleged Misstatements

The final element of common law fraud that must be alleged with requisite specificity pursuant to Rule 9(b) is proximate cause. The Complaint is devoid of any allegations that O'Connor sent BMO quotes that were inconsistent with market prices. Therefore, any reliance by BMO on O'Connor's alleged price quotations could not have resulted in any injury to BMO. Furthermore, Plaintiff's assertion that it "suffered trading losses that could have been prevented had BMO been given correct pricing information concerning its natural gas positions on a timely basis" (Cpt. ¶ 129) is a self-serving conclusion. On the contrary, the allegations in the Complaint reveal that BMO contemplated using Totem's multi-contributor quote service as early as late 2005 (Cpt. ¶ 65) and did subscribe to Totem in September 2006 (Cpt. ¶ 70).  Moreover, BMO claims that it knew that Lee's prices were more favorable than actual market prices as early as August 2006 (Cpt. ¶¶ 37 -40) and October 2006 (Cpt. ¶ 71), yet it <u>chose</u> to use Lee's valuations anyway.

Finally, BMO alleges that its loss of CDN$477 million is attributable to transactions that occurred on or after November 1, 2006 (Cpt. ¶ 107). Accordingly, O'Connor's alleged conduct cannot be the proximate cause of these losses since his alleged misconduct occurred on May 31, 2005. Similarly, the alleged losses attributable to transactions prior to November 1, 2006 (*id.*), are not shown to be proximately caused by O'Connor's alleged misconduct.

**B.    The Claim of Negligent Misrepresentation against O'Connor is not Adequately Pled**

To state a claim of negligent misrepresentation under New York law, the Plaintiff must plead: "(1) [O'Connor] had a duty, as a result of a special relationship, to give correct information; (2) [O'Connor] made a false representation that he should have known was

incorrect; (3) the information supplied in the representation was known by [O'Connor] to be desired by [BMO] for a serious purpose; (4) the Plaintiff intended to rely and act upon it; and (5) the Plaintiff reasonably relied on it to its detriment." *Madison Capital Company, LLC v. Alasia, LLC,* 615 F.Supp.2d 233, 239 (S.D.N.Y. 2009) (quoting *Hydro Investors, Inc. v. Trafalgar Power, Inc.,* 227 F.3d 8, 20 (2d Cir. 2000). "Negligent misrepresentation involves most of the same elements as fraud, with a negligence standard substituted for the *scienter* requirement." *DeBlasio v. Merrill Lynch & Co., Inc.,* No. 07 Civ. 318 (RJS), 2009 WL 2242605, at *32 (S.D.N.Y. July 27, 2009) (internal quotation marks and citations omitted). Accordingly, Plaintiff's allegations against O'Connor in support of its negligent misrepresentation claim are substantially similar to its fraud claim. *See* Count II, ¶¶ 135 – 151. For some of the reasons set forth above, and those set forth below, Plaintiff's claim of negligent misrepresentation against O'Connor must be dismissed pursuant to Rules 8(a)(2), 9(b) and 12(b)(6).

        1.      The Complaint Fails to Adequately Plead a Special Relationship Between BMO and O'Connor

"Under New York law, a plaintiff may not recover for negligent misrepresentation in the absence of a special relationship of trust or confidence between the parties." *Banque Arabe*, 57 F.3d at 39. "It is from this special relationship that an independent duty to speak with care arises." *Meisel*, 2009 WL 2777165, at *18. A court must consider three factors to determine if a special relationship and duty exist: "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Madison Capital,* 615 F.Supp.2d at 240 (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 103 (2d Cir. 2001).

The Complaint contains <u>no</u> allegation of a special relationship between <u>O'Connor</u> and BMO.  Should the Court determine that an implication exists that O'Connor had a relationship with BMO as its broker (although no such direct allegation is made in the Complaint), such arguable relationship is not a "special" one in this context. "Although a broker-client relationship can evolve into a special relationship, the mere fact that [the defendant] and the plaintiffs had a broker-client relationship does not in and of itself create a special or fiduciary relationship." *DeBlasio,* 2009 WL 2242605, at *33 (internal quotation marks omitted). It is well-settled law that a broker's duty to a customer in connection with a non-discretionary account ends upon the conclusion of any given transaction conducted on behalf of the customer. *See De Kwiatkowski v. Bear, Stearns & Co., Inc.,* 306 F.3d 1293, 1306 (2d Cir. 2002) ("the broker has narrowly defined duties that begin and end with each transaction"). The overall tenor of the Complaint reveals that Optionable's brokerage relationship with BMO was <u>not</u> a discretionary one; all of the investment decisions on BMO's behalf were made by Lee. "On a transaction-by-transaction basis, the broker owes duties of diligence and competence in executing the client's trade orders, and is obliged to give honest and complete information when recommending a purchase or sale. The client may enjoy the broker's advice and recommendations with respect to a given trade, but has no legal claim on the broker's ongoing attention." *Id.* at 1302. Accordingly, O'Connor's (presumed) fiduciary duty as BMO's broker ended with each transaction he conducted, if any. There are no allegations in the Complaint that O'Connor conducted any transactions on BMO's behalf on March 31, 2005 in connection with the price quotations that he purportedly communicated to BMO, thus, the Complaint fails to show that, as a matter of law, O'Connor owed any fiduciary duty to BMO in connection with such pricing information. Therefore, Plaintiff's failure to allege a special relationship with O'Connor mandates the dismissal of Count II of the Complaint as

against O'Connor. *See Meisel,* 2009 WL 2777165, at *18 (dismissing negligent misrepresentation claim against one of the defendants where plaintiff failed to plead a special relationship with that defendant).

2.      The Complaint Fails to Adequately Plead a False Representation

"Negligent misrepresentation is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard. . . . Accordingly, Rule 9(b)'s particularity requirement demands that the complaint contain specific factual allegations demonstrating that a statement was false or misleading when made." *Maalouf v. Salomon Smith Barney, Inc.,* No. 02 Civ. 4770 (SAS), 2003 WL 1858153, at *4 (S.D.N.Y. April 10, 2003). For the reasons stated above (Section I.A.1), Plaintiff has failed to allege that O'Connor made a false representation to BMO with requisite particularity under Rule 9(b). *Id.* (dismissing claim of negligent misrepresentation for failure to meet Rule 9(b) particularity requirements).

3.      The Complaint Fails to Adequately Plead BMO's Reasonable Reliance

Also for the reasons stated above (Section I.A.3), the Complaint fails adequately to allege BMO's reasonable reliance on the purported misrepresentation made by O'Connor. *Spain v. Deutsche Bank,* No. 08 Civ. 10809 (LBS), 2009 WL 3073349, at *3 (S.D.N.Y. September 18, 2009) (dismissing plaintiff's claims for common law fraud and negligent misrepresentation for failure to adequately plead the essential element of reasonable reliance). "[E]ven where a duty to disclose may exist, it does not necessarily follow that a party, even one with a special relationship, reasonably relied on misrepresentations or omissions." *PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.,* No. 99 Civ. 3794 (BSJ), 2003 WL 22118977, at * 27 (S.D.N.Y. September 11, 2003) (dismissing negligent misrepresentation claim for failure to show reasonable reliance on alleged misrepresentations or omissions).

### C.     BMO Fails to Allege its Claim against O'Connor for Aiding and Abetting Lee's Fraud with Requisite Particularity Pursuant to Rule 9(b)

While the Complaint makes a number of allegations in its aiding and abetting fraud claim (Count III), the only allegations relevant to O'Connor are that he allegedly aided and abetted the following fraudulent misrepresentations by Lee to BMO (i) that the prices in Lee's natural gas book were verified by independent market price quotes; and (ii) that the EOO trades were legitimate transactions that generated a net profit for BMO. *See* Cpt. ¶¶ 153-155, 159-162.

In order to establish a claim for aiding and abetting fraud under New York law, Plaintiff must show (1) the existence of a fraud; (2) defendant's actual knowledge of the fraud; and (3) proof that the defendant provided substantial assistance to advance the fraud's commission. *Filler v. Hanvit Bank,* 156 Fed.Appx. 413, 417, 2005 WL 3270944 (2d Cir. 2005). "[T]he particularity requirements of Rule 9(b) apply to claims of aiding and abetting fraud no less than to direct fraud claims." *Id.* (affirming the dismissal of aiding and abetting claims for lack of particularity).

#### 1.     The Complaint Fails to Adequately Allege O'Connor's Actual Knowledge

In order to survive a motion to dismiss, "the Complaint must allege facts giving rise to a "strong inference" of defendant's actual knowledge of the fraud." *Thomas H. Lee Equity Fund v. Grant Thornton LLP,* 586 F.Supp.2d 119, 131 (S.D.N.Y. 2008). "Constructive knowledge of the primary fraud – the possession of information which would cause a person exercising reasonable care and diligence to become aware of the fraud – is not sufficient to support an aiding and abetting claim." *Filler v. Hanvit Bank,* 339 F.Supp.2d 553, 557 (S.D.N.Y. 2004). Although the Complaint alleges repeatedly that O'Connor "knew" about Lee's alleged fraudulent misrepresentations, these conclusory allegations are not supported by particularized facts to support a strong inference of O'Connor's "actual knowledge." Indeed, the Complaint is devoid

of <u>any</u> specific allegations that O'Connor was informed or was otherwise aware that Lee made representations to BMO (i) concerning the purportedly independent nature of Optionable's or O'Connor's price quotes; or (ii) that the EOO trades generated a net profit for BMO. Plaintiff attempts to circumvent this pleading requirement by summarily alleging that O'Connor knew that "the EOO trades required a net payment of premium by BMO to its counterparties, and that [O'Connor knew that] the reason Lee arranged the EOO trades was to conceal the overvaluation of and losses suffered by BMO's natural gas options book." Cpt. ¶ 160. These conclusory allegations do not satisfy Plaintiff's obligation to establish a "strong inference" of O'Connor's "actual knowledge." Plaintiff has failed to allege specific facts demonstrating that O'Connor actually was aware that Lee was (mis)reporting the trades to BMO.[6] Accordingly, it is irrelevant that O'Connor <u>may</u> have been aware of the alleged net premiums paid by BMO concerning those EOO transactions that he allegedly brokered.

Likewise, the conclusory assertion that O'Connor was aware of Lee's alleged motives for the EOO trades presupposes that O'Connor was aware that Lee had overvalued and accumulated losses in BMO's book of natural gas options. Yet, the Complaint contains <u>no</u> allegations that O'Connor was informed of, or otherwise had access to, Lee's book of natural gas options.

Plaintiff's reliance upon conclusions, deductions and assumptions will not satisfy Rule 9(b)'s particularity requirement. *See ATSI Commc'ns, Inc.,* 493 F.3d at 99. Without the foregoing specified factual allegations, the Complaint fails to plead O'Connor's actual knowledge with Rule 9(b) particularity, the cause of action should be dismissed. *See Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 293 (2d Cir. 2006) (affirming dismissal of claims for aiding and

---

[6] It defies common sense that Lee's execution of the EOO trades at a net loss could evade BMO's detection when, upon information and belief, the EOO trades realized a net loss rather than a net premium (as allegedly misreported by Lee to BMO) at the time the trades settled.

abetting fraud where the actual knowledge of the defendants was not alleged with sufficient particularity under Rule 9(b)).

   2.   The Complaint Fails to Adequately Allege O'Connor's Substantial Participation

"An aider and abettor provides substantial assistance when he or she affirmatively assists, helps conceal, or by virtue of failing to act when required to do enables the fraud to proceed." *OSRecovery, Inc. v. One Groupe Int'l, Inc.,* 354 F.Supp.2d 357, 378 (S.D.N.Y. 2005) (internal quotation marks omitted); *accord Filler,* 339 F.Supp.2d at 557. Although Plaintiff asserts that O'Connor "substantially assisted Lee's fraud by submitting Lee's prices to BMO while representing them as prices that were provided independently by Optionable" (Cpt. ¶ 153), the Complaint does not contain factual allegations sufficient to support this conclusion. Allegations that are conclusory or unsupported by factual assertions are insufficient. *ATSI Commc'ns, Inc.,* 493 F.3d at 99.

Plaintiff's additional allegations that O'Connor "substantially assisted Lee's EOO trading fraud by arranging the EOO trades with BMO" also will not suffice. Cpt. ¶ 161. While the Complaint arguably implies that O'Connor allegedly brokered some of the EOO trades with Lee, significantly, it does not allege that O'Connor initiated the EOO transactions with Lee. Further, all of Lee's transactions were non-discretionary; Lee solely was responsible for entering into favorable or unfavorable trades on BMO's behalf. Moreover, O'Connor is <u>not</u> alleged to have acted as the broker for BMO or for the counterparties affiliated with or friendly to another Optionable Defendant on the EOO trades. Nor is O'Connor alleged to having received <u>any</u> commissions as a result of the EOO transactions. Without the requisite knowledge that Lee entered the EOO transactions into BMO's systems in a manner that concealed their net losses, O'Connor's alleged conduct does not rise to the level of "substantial assistance" of Lee's alleged

fraud. Thus, Plaintiff has failed to state a plausible claim for aiding and abetting fraud against O'Connor with the particularity required by Rule 9(b).

### D. BMO Fails to Allege its Claim against O'Connor for Aiding and Abetting Lee's Breach of Fiduciary Duty with Requisite Particularity Pursuant to Rule 9(b)

Under New York law, in order to state a claim for aiding and abetting a breach of fiduciary duty, the Plaintiff must allege: (1) a breach by a fiduciary of obligations of another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) the plaintiff suffered damage as a result of the breach. *In re Sharp International Corp.,* 403 F.3d 43, 49 (2d Cir. 2005). "Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty – statutory, common law, tort, contractual, or fiduciary." *Frota v. Prudential-Bache Sec.,* 639 F.Supp. 1186, 1193 (S.D.N.Y. 1986); *see also, Kolbeck v. LIT America,* 939 F.Supp. 240, 245 (S.D.N.Y. 1996) (citing *S&K Sales Co. v. Nike, Inc.,* 816 F.2d 843, 847-48 (2d Cir. 1987)) ("To the extent the underlying primary violations are based on fraud, the allegations of aiding and abetting liability must meet the particularity requirements of Fed.R.Civ.P. 9(b)."). Therefore, as in Section I.C. above, the claim of aiding and abetting a breach of fiduciary duty must be alleged against O'Connor with requisite particularity under Rule 9(b).

In Count IV of the Complaint, Plaintiff alleges that O'Connor aided and abetted the following purported breaches of Lee's fiduciary duties to BMO: (i) Lee's alleged misrepresentation that the prices in his natural gas book were verified by independent market price quotes when Lee (a) allegedly knew that he created those quotes which did not reflect actual market prices, and (b) allegedly provided his created quotes to Optionable Defendants, including O'Connor, knowing that they would submit such quotes to BMO as independent

market quotes, in order to undermine BMO's IPV process and hide Lee's purported trading losses; and (ii) Lee's alleged misrepresentation to BMO that the EOO trades generated a net profit for BMO when Lee purportedly knew that (a) the EOO trades required a net premium be paid by BMO to its counterparties, and (b) he had arranged them to conceal his overvaluations and losses in BMO's natural gas options book. The facts alleged in support of the aiding and abetting Lee's breach of fiduciary duty claim against O'Connor are essentially the same as those alleged in support of the claim for aiding and abetting Lee's fraud.

          1.      <u>The Complaint Fails to Adequately Allege O'Connor's Actual Knowledge</u>

In order to plead the element of actual knowledge sufficiently, Plaintiff must allege "[a]ctual knowledge, as opposed to merely constructive knowledge, … and a plaintiff may not merely rely on conclusory and sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty." *Meisel*, 2009 WL 2777165, at *10 (quoting *Global Minerals & Metals Corp. v. Holme,* 35 A.D.3d 93, 101-02, 824 N.Y.S.3d 210, 217 (App. Div. 2006). Similar to the allegations in support of Count III (see Section I.C.1. above), the Complaint fails to allege O'Connor's "actual knowledge" without resorting to conclusory allegations. Again, for this cause of action, Plaintiff merely asserts that O'Connor (1) "knew" that Lee was misrepresenting to BMO that the prices in his natural gas book had been verified by independent market price quotes (Cpt. ¶ 180), (2) "knew" that Lee misrepresented to BMO that the EOO trades generated a net profit for BMO, and (3) "knew" that BMO paid a net premium to its counterparties for the EOO trades, and that the reason Lee executed the EOO trades was to conceal his overvaluation of, and the losses in, BMO's natural gas options book (Cpt. ¶ 183). Thus, for the reasons set forth in Section I.C.1. above, Plaintiff fails to allege O'Connor's "actual knowledge" with requisite particularity under Rule 9(b).

2.      The Complaint Fails to Adequately Allege O'Connor's Substantial Participation

"Under New York law, '[s]ubstantial assistance may only be found where the alleged aider and abettor affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.'" *Meisel,* 2009 WL 2777165, at *10 (quoting *In re Sharp Int'l Corp.,* 403 F.3d at 50) (internal quotation marks omitted). Significantly, the Complaint does not allege that O'Connor induced Lee to commit the purported breach; it only alleges O'Connor's participation in the purported breaches. The Complaint asserts that O'Connor substantially assisted Lee's breaches of fiduciary duty by (1) submitting to BMO Lee's prices as though they were independent market prices (Cpt. ¶ 181); and (2) "arranging" the EOO trades with BMO (Cpt. ¶ 184). The allegations made in support of the "substantial assistance" element of the claim of aiding and abetting Lee's purported breaches of fiduciary duties are substantially similar to those in the claim of aiding and abetting Lee's purported fraud. Accordingly, the same analysis set forth in Section I.C.2. applies here. Thus, Plaintiff fails to state a plausible claim for aiding and abetting a breach of fiduciary duty against O'Connor with the particularity required by Rule 9(b). *See In re Sharp,* 403 F.3d at 49-52 (affirming the dismissal of aiding and abetting breaches of fiduciary duty claims where the complaint insufficiently alleged knowing inducement or participation in the breaches).

**II.      In the Alternative, the Claims of Negligent Misrepresentation and Aiding and Abetting a Breach of Fiduciary Duty against O'Connor Must be Dismissed as Time Barred under New York Law**

Should the Court determine that the claims of negligent misrepresentation and aiding and abetting a breach of fiduciary duty against O'Connor do not properly warrant Rule 9(b) particularity in pleading [because they do not properly sound in fraud], then, in the alternative, the Court should dismiss these claims, or parts thereof, against O'Connor as time barred under

New York law. New York's statute of limitations for negligence claims, including negligent misrepresentation (not sounding in fraud) and for aiding and abetting a breach of fiduciary duty[7] (seeking money damages)[8] is three years. N.Y. C.P.L.R. § 214(4) (claims for injury to property). *See Colon v. Banco Popular N.A.,* 59 A.D.3d 300, 874 N.Y.S.2d 44 (1st Dep't 2009) (affirming dismissal of negligent misrepresentation claim not based in fraud under three-year statute of limitations); *IDT Corp.,* 12 N.Y.3d at 140-41 (reversing lower courts and holding breach of fiduciary duty claim as time barred by the three-year statute of limitations).

The only alleged misrepresentation against O'Connor that actually is articulated in the Complaint is dated March 31, 2005. *See* Cpt. ¶ 36. This alleged misrepresentation also is the basis of O'Connor's purported "substantial assistance" for one of the claims of aiding and abetting a breach of fiduciary duty against him. *See* Cpt. ¶ 181. The limitation period for these claims accrued at the time Plaintiff allegedly relied upon the purported misrepresentation, which, here, was at the time it was made. *Fandy Corp. v. Lung-Fong Chen,* 262 A.S.2d 352, 353, 691 N.Y.S.2d 572 (2d Dep't 1999) ("A cause of action based on negligent misrepresentation accrues on the date of the alleged misrepresentation which is relied upon by the plaintiff."); *IDT Corp.,* 12 N.Y.3d at 140 ("A tort claim accrues as soon as the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint.") (internal quotations marks omitted). The Complaint in this case was filed on or about August 28, 2009, over four years after

---

[7] New York does not have aiding and abetting statutes of limitations, rather such claims are governed by the limitations period of the underlying claim. *See, e.g., Schlissel v. Subramanian,* 25 Misc.3d 1219(A), 2009 WL 3465948, at *9 (Sup. Ct. Kings Co. 2009); *Williams v. Sidley Austin Brown & Wood,* 15 Misc.3d 1125(A), 2007 WL 1203594, at *5 (Sup. Ct. N.Y. Co. 2007).

[8] In New York, the statute of limitations for a breach of fiduciary duty claim is dependent upon the remedy sought. "Where the remedy sought is purely monetary in nature, courts construe the suit as alleging 'injury to property' within the meaning of CPLR 214(4), which has a three-year limitations period…. Moreover, where an allegation of fraud is essential to a breach of fiduciary duty claim, courts have applied a six-year statute of limitations under CPLR 213(8)." *IDT Corp. v. Morgan Stanley Dean Witter & Co.,* 12 N.Y.3d 132, 139, 879 N.Y.S.2d 355 (2009) (internal citations omitted).

the claimed misrepresentation was allegedly made. Therefore, the claims of negligent misrepresentation and aiding and abetting a breach of fiduciary duty, or parts thereof, must be dismissed as time barred as against O'Connor pursuant to Rule 12(b)(6).

<u>**CONCLUSION**</u>

For the foregoing reasons, the Plaintiff has failed to allege facts sufficient to support its claims against O'Connor, and therefore, the Complaint must be dismissed as against O'Connor pursuant to Rules 8(a)(2), 9(b) and 12(b)(6) with prejudice and without leave to amend.

Dated: New York, New York
      December 7, 2009

Respectfully submitted,

**McCormick & O'Brien, LLP**

By:    /s/ Liam O'Brien        
Liam O'Brien, Esq. (LO-3930)
Marni Rae Robin (MR-3461)
9 East 40th Street, 4th Floor
New York, New York 10016
Tel: (212) 286-4471
Fax: (212) 504-9574
lobrien@mcoblaw.com
mrobin@mcoblaw.com

*Attorneys for Edward J. O'Connor*