UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BANK OF MONTREAL, | : | |
| | : | No. 09-CV-07557 (GBD) |
| Plaintiff, | : | |
| | : | ECF FILED |
| -against- | : | ORAL ARGUMENT REQUESTED |
| | : | |
| OPTIONABLE, INC., MF GLOBAL INC., | : | |
| KEVIN P. CASSIDY, EDWARD J. | : | |
| O'CONNOR, MARK A. NORDLICHT, | : | |
| RYAN B. WOODGATE, SCOTT CONNOR | : | |
| and JOSEPH D. SAAB, | : | |
| | : | |
| Defendants. | : | |

REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT EDWARD J. O'CONNOR'S
MOTION TO DISMISS THE COMPLAINT

McCormick & O'Brien, LLP

Liam O'Brien
Marni Rae Robin
9 East 40th Street, 4th Floor
New York, New York 10016
Tel: (212) 286-4471
Fax: (212) 504-9574

*Attorneys for Edward J. O'Connor*

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ..................................................................................1

A. Fraud Elements ......................................................................................................2

    1.  Material Misrepresentation .................................................................................2

        (a) Alleged Purported Independence of Price Quotes ........................................2

        (b) No Alleged Inaccuracy of Price Quotes.........................................................3

        (c) Optionable's Alleged Prominence in the Market..........................................3

    2.  *Scienter* .............................................................................................................3

    3.  Reasonable Reliance ...........................................................................................6

    4.  Proximate Cause .................................................................................................7

B. Negligent Misrepresentation Elements ..................................................................8

    1.  Special Relationship.............................................................................................8

    2.  Kimmel Criteria .................................................................................................10

C. Aiding and Abetting Fraud and Breach of Fiduciary Duty Elements....................13

    1.  Actual Knowledge .............................................................................................13

    2.  Substantial Assistance.......................................................................................14

D. Either Rule 9(b) Applies to Negligent Misrepresentation and Aiding and Abetting Breach
    of Fiduciary Duty Claims Against O'Connor or They Are Time Barred...............................14

**CONCLUSION** ......................................................................................................**15**

## TABLE OF AUTHORITIES

**Cases**

*380544 Canada, Inc. v. Aspen Tech., Inc.,* 544 F.Supp.2d 199 (S.D.N.Y. 2008) .........................4

*380544 Canada, Inc. v. Aspen Tech., Inc.,* 633 F.Supp.2d 15 (S.D.N.Y. 2009) ...........................6

*Allied Irish Banks, P.L.C. v. Bank of America,* No. 03 Civ. 3748, 2006 U.S. Dist. LEXIS 4270 (S.D.N.Y. Jan. 31, 2006) ........................................................................................................4

*Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) .....................................................................................13

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87 (2d Cir. 2007) .......................................13

*B&M Linen, Corp. v. Kannegiesser,* No. 08 Civ. 10093, 2010 U.S. Dist. LEXIS 4257 (S.D.N.Y. January 19, 2010)..................................................................................................10, 12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007)..................................................1

*DeBlasio v. Merrill Lynch & Co., Inc.,* No. 07 Civ. 318 (RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ......................................................................................................................12

*De Kwiatkowski v. Bear, Stearns & Co., Inc.,* 306 F.3d 1293 (2d Cir. 2002)................................9

*Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of NY,* 375 F.3d 168 (2d Cir. 2004) ........................................................................................................................11

*Glidepath Holding B.V. v. Spherion Corp.,* 590 F.Supp.2d 435 (S.D.N.Y. 2007) ..........................6

*GMAC Mtg. Corp. of PA v. Weisman,* No. 95 Civ. 9869 (JFK), 1997 U.S. Dist. LEXIS 2042 (S.D.N.Y. Feb. 27, 1997)...........................................................................................................4

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.,* 17 F.Supp.2d 275 (S.D.N.Y. 1998)...............7

*Kimmel v. Schaefer,* 89 N.Y.2d 257, 652 N.Y.S.2d 715 (1996)..............................................10, 13

*Kinsey v. Cendant Corp.,* No. 04 Civ. 0582 (RWS), 2004 U.S. Dist. LEXIS 23059 (S.D.N.Y. Nov. 16, 2004) .....................................................................................................................4

*Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, No. 08 CV 01720 (LAP), 2009 U.S. Dist. LEXIS 27363 (S.D.N.Y. March 31, 2009) ........................................................1

*Official Comm. of Unsecured Creditors ex rel. SmarTalk Teleservices, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.,* No. 00 Civ. 8688, 2002 U.S. Dist. LEXIS 3747 (S.D.N.Y. March 6, 2002) ...................................................................................................................................1

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 127 S.Ct. 2499 (2007).......................6

*Welch v. TD Ameritrade,* No. 07 Civ. 6904 (RJS), 2009 U.S. Dist. LEXIS 65584 (S.D.N.Y. July 27, 2009) ..................................................................................................................................11

**Statutes**

Fed.R.Civ.P. 8(a)(2) ...........................................................................................................1, 15

Fed.R.Civ.P. 9(b) ............................................................................................................ Passim

Fed.R.Civ.P. 12(b)(6) .........................................................................................................1, 15

Defendant O'Connor, by and through his attorneys McCormick & O'Brien, LLP, hereby submits this reply brief ("Reply") in further support of his Motion to Dismiss the Complaint ("MTD" or "O'Connor Br.")[1] pursuant to Rules 8(a)(2), 9(b) and 12(b)(6). O'Connor incorporates herein the arguments and authorities set forth in the memoranda of law submitted by his co-Defendants in reply to Plaintiff's opposition brief ("Opposition Brief" or "Opp. Br.") as they relate to O'Connor.

## PRELIMINARY STATEMENT

BMO's Opposition Brief, does not and cannot cure the fatal defects of the Complaint as they relate to O'Connor. Indeed, nowhere in the 71 pages of the Opposition Brief does BMO identify any particularized facts set forth in the Complaint as against O'Connor that are sufficient to meet the requirements of Rule 9(b).[2] The Opposition Brief also does not demonstrate that the allegations against O'Connor have "nudged [BMO's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). Rather, Plaintiff relies upon conclusory statements and circular arguments in an effort to remedy the

---

[1] All abbreviations for terms identified in the MTD are incorporated herein by reference.

[2] Plaintiff concedes that Rule 9(b) applies to all of the causes of action against O'Connor except aiding and abetting breach of fiduciary duty. *See* Opp. Br. at 22 (fraud), 46 (negligent misrepresentation) and 53, n. 39 (aiding and abetting fraud). Although Plaintiff concedes that the allegations in support of this claim mirror those underlying the aiding and abetting fraud claim, Plaintiff claims that Rule 9(b) does not apply to a claim for aiding and abetting breach of fiduciary duty. Opp. Br. at 53, n. 39 and 63. However, the authority cited by *Musalli Factory for Gold & Jewellry v. JP Morgan Chase Bank,* No. 08 CV 01720 (LAP), 2009 U.S. Dist. LEXIS 27363, at *24 (S.D.N.Y. March 31, 2009) – the case Plaintiff cites to as authority for this blanket statement – clarifies that, although "Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty… [, it] does not extend to allegations of breach of [fiduciary] duty … by conduct not amounting to fraud or mistake… such as by breaching [] duties of care, disclosure and loyalty." *Official Comm. of Unsecured Creditors ex rel. SmarTalk Teleservices, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.,* No. 00Civ. 8688, 2002 U.S. Dist. LEXIS 3747, at *24-25 (S.D.N.Y. March 6, 2002). Therefore, Rule 9(b) did not apply to the aiding and abetting breach of fiduciary duty claims under the facts asserted in that case. *Id.* at 31. Since, the facts underlying the aiding and abetting fraud and aiding and abetting breach of fiduciary duty here claims mirror one another, Rule 9(b) applies to both claims against O'Connor. *See also,* O'Connor Br. at 22.

absence of sufficiently alleged factual assertions in the Complaint. Thus, the Complaint remains legally insufficient to survive O'Connor's MTD.

**A.**    <u>**Fraud Elements**</u>

        1.    <u>Material Misrepresentation</u>

            (a)    <u>Alleged Purported Independence of Price Quotes</u>

Plaintiff patently misrepresents to the Court that it "specifically pleads 17 instances in which Optionable, Connor, Cassidy and O'Connor provided quotations to BMO, ***misrepresenting them as collected from independent market sources as desired by BMO,*** when in fact the quotes were purely provided by Lee." Opp. Br. at 18 (emphasis added). Nary one allegation can be found in the Complaint demonstrating where, how and when O'Connor purportedly misrepresented to BMO that the price quotations were "collected from independent market sources." Such purported misrepresentation is the crux of this fraud claim against O'Connor, and yet BMO fails to identify a single such misrepresentation by O'Connor. Likewise, Plaintiff disingenuously states that, with each instance of price quotation fraud alleged as against O'Connor (only one date is identified in the Complaint, ¶ 36), BMO has alleged with particularity "a description of the contents of the relevant communications." Opp. Br. at 18.  In a word, <u>where</u>? The "relevant communications" in this instance reasonably would include an alleged representation by O'Connor made to BMO that the quotes were his independent assessments of the market, or a representation made to O'Connor by BMO indicating its expectation that quotes from O'Connor would be his independent views of the market. Plaintiff's glaring failure to identify any such non-conclusory allegation against O'Connor with the specificity required by Rule 9(b) leads to only one conclusion: that no such representations were

made with respect to O'Connor. Plaintiff has, thus, failed to sufficiently allege the most critical element of its fraud claim as against O'Connor, and it must be dismissed.

(b)   <u>No Alleged Inaccuracy of Price Quotes</u>

By its omission, Plaintiff concedes that it has not made any allegation that any of the pricing information that O'Connor purportedly provided to BMO was false or otherwise inaccurate. Plaintiff specifically identifies only paragraphs 37, 38-40 (concerning the Optionable Defendants) as those in which the Complaint specifically pleads that Lee's prices, confirmed by Defendants, were inflated. Opp. Br. at 20. Significantly, none of these paragraphs relate to O'Connor.

(c)   <u>Optionable's Alleged Prominence in the Market</u>

Plaintiff's Opposition Brief does not identify facts in support of Plaintiff's claim that O'Connor misrepresented Optionable's prominence in the market. Factual allegations specific to O'Connor are necessary to support a claim for individual liability against him. *See* Opp. Br. at 20-21, Cpt. ¶¶ 74-76.  *See also,* Reply § B.2. *infra;* O'Connor Br. at 9-10. Indeed, Plaintiff argues only that "Optionable [and not O'Connor] misrepresented its prominence in the natural gas markets…." Opp. Br. at 20. Therefore, this claim of fraud against O'Connor must be dismissed.

*2.*   *Scienter*

Plaintiff's Opposition Brief does not reference specific allegations against O'Connor in the Complaint evidencing either (i) motive and opportunity, or (ii) strong circumstantial evidence of conscious misbehavior or recklessness sufficient to give rise to a strong inference of *scienter*. Plaintiff's arguments rely entirely on impermissible clumping of the "Optionable Defendants" together as though they were a single entity rather than delineating specific allegations made

3

against O'Connor as an individual. *See* Opp. Br. at 22-23. *See also, Kinsey v. Cendant Corp.,* No. 04 Civ. 0582 (RWS), 2004 U.S. Dist. LEXIS 23059, at * 39 (S.D.N.Y. Nov. 16, 2004) ("Plaintiff's *scienter* allegations fail for the independent reason [] that . . . [they] lump Defendants together") (internal quotation marks omitted); *380544 Canada, Inc. v. Aspen Tech., Inc.,* 544 F.Supp.2d 199, 218 (S.D.N.Y. 2008) ("Indiscriminate defendant 'clumping' does not adhere to the particularity standards of Fed.R.Civ.P. 9(b)") (internal quotation marks omitted).

    Plaintiff fails to address how O'Connor's purportedly alleged "motive" to earn greater revenue for Optionable is distinct from motives which are generally held by most corporate officers and directors, and therefore, by omission, concedes that it is not. Such a motive is not sufficient to establish fraudulent intent.[3] *See* O'Connor Br. at 10-11. To remedy this defect, the Opposition Brief improperly <u>alleges</u> a fact nowhere found in the Complaint: that "the fees that allegedly motivated defendants to perpetrate the fraud are '<u>unusually large</u>.'" Opp. Br. at 24 (emphasis added).[4] "[P]apers in response to a motion to dismiss cannot cure a defect in the pleadings." *GMAC Mtg. Corp. of PA v. Weisman,* No. 95 Civ. 9869 (JFK), 1997 U.S. Dist. LEXIS 2042, at *10 (S.D.N.Y. Feb. 27, 1997). Nothing about the fees is alleged to be extraordinary, and none of the fees are alleged to be <u>directly</u> connected the alleged provision of quotes to BMO.[5] Furthermore, Plaintiff's failure to address the lack of temporal proximity of O'Connor's alleged misrepresentation (on May 31, 2005) to his sale of Optionable shares to

---

[3] Nor does the Opposition Brief point to any allegation relating specifically to O'Connor as an individual to support such an insufficient motive. *Id.* at 10.

[4] The authority cited by Plaintiff, *Allied Irish Banks, P.L.C. v. Bank of America,* No. 03 Civ. 3748, 2006 U.S. Dist. LEXIS 4270, (S.D.N.Y. Jan. 31, 2006) is distinguishable to the instant case. *See* Opp. Br. at 23-24. The complaint in *Allied Irish Banks* alleged unusually large brokerage fees and exorbitant interest on transactions in addition to a myriad of other indicia alleged to sufficiently plead motive, none of which is alleged in the Complaint. *Id.* at *19-20.

[5] Indeed, Optionable is not alleged to have increased the transactional fees it charged BMO due to its alleged provision of pricing information. The OPEX RealMarks Agreement is alleged to be a separate transaction unrelated to Optionable's brokerage services.

NYMEX (on April 10, 2007) fairly concedes a lack of concrete and personal benefit to O'Connor, which is a necessary corollary to properly allege motive. *See* O'Connor Br. at 11-12.

Plaintiff failed to address O'Connor's argument that certain allegations would be necessary to show O'Connor's recklessness by circumstantial evidence under the alleged circumstances: namely, that O'Connor: (i) was aware that Lee allegedly had been inflating the values he assigned to his book of natural gas options; (ii) was informed by BMO or anyone else that BMO expected O'Connor to seek independent marketplace price quotes rather than simply review the valuations provided by Lee for errors based on O'Connor's knowledge of the market at the time; and (iii) communicated to BMO that his price quotes were based on independent prices that he observed in the market. O'Connor Br. at 12-13. Accordingly, Plaintiff has conceded these points. Moreover, the Opposition Brief and the underlying Complaint do not contain allegations of deliberate illegal behavior by O'Connor evincing conscious misbehavior. *See* O'Connor Br. at 12.

Plaintiff asserts that the Complaint alleges that the Defendants "knew" or "had to know" that BMO sought independent prices from them to verify values in BMO's natural gas options book in an effort to demonstrate conscious misbehavior or recklessness. In support of this argument, Plaintiff points to allegations contained in the Complaint purporting to evidence that the Defendants "would provide quotes from independent market sources." Opp. Br. at 22-23. Plaintiff also argues that the Optionable Defendants made oral and written representations to BMO that they had access to and could supply real-time quotes from actual independent market sources through OPEX. *Id.* at 23. Yet, <u>none</u> of the paragraphs referenced by Plaintiff demonstrate that O'Connor ever made any such representations. *Id.,* referencing Cpt. ¶¶ 27, 34-35, 37, 44, 53, 73-77.

Thus, the Complaint fails to adequately allege O'Connor's purported *scienter* to commit fraud pursuant to Rule 9(b)'s particularity standard. Moreover, the Supreme Court's explanation in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2504-05 (2007), of how competing inferences of fraudulent and non-fraudulent intent should be weighed in a PSLRA case is persuasive authority in assessing the pleading of a "strong inference of *scienter*" in a common law fraud claim. *Glidepath Holding B.V. v. Spherion Corp.*, 590 F.Supp.2d 435, 451 (S.D.N.Y. 2007); *accord, 380544 Canada, Inc. v. Aspen Tech., Inc.*, 633 F.Supp.2d 15, 29, (S.D.N.Y. 2009) ("Although *Tellabs* is not controlling [in a common law fraud case], it is persuasive") (emphasis added).[6]

   3.   <u>Reasonable Reliance</u>

The Opposition Brief fails to address, and therefore concedes, many of the arguments raised in O'Connor's MTD. *See* O'Connor Br. at 13-14. Plaintiff argues that BMO reasonably relied on the Optionable Defendants' purported misrepresentations concerning the source of their price quotes because the Optionable Defendants "portrayed Optionable as a major player in the derivatives market with access to actual market quotes from multiple sources." This is a blatant attempt to distract the Court from BMO's own conceded expertise, knowledge of and access to commodity derivatives markets and prices as indicated throughout the Complaint, including, without limitation, at ¶¶ 19-20, 23-24, 27(b), 39-40, 65-68, 70-71 and 96. As it does elsewhere in its Opposition Brief, Plaintiff improperly attempts to <u>allege</u> facts that are nowhere found in the Complaint: namely that "'the prices quoted by other market participants at the time' of the [alleged] fraud" were retrospective references to prices not available to BMO at that time. Opp. Br. at 27 (referencing Cpt. ¶¶ 38-40). Finally, Plaintiff concedes that a sophisticated entity such

---

[6]   It appears that Plaintiff intentionally "reworded" this quote in its Brief. The changed wording is misleading. *See* Opp. Br. at 25.

as BMO consciously ignored conflicting price information it received from Lee and Totem (*see* Opp. Br. at 28-29). Assuming *arguendo* that Optionable misrepresented to BMO the independence of its pricing, this alleged misrepresentation does not serve to relieve BMO of its duty of independent due diligence. *See Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F.Supp.2d 275, 290 (S.D.N.Y. 1998) (finding that justifiable reliance – a proper subject for a motion to dismiss – was insufficiently pled where a plaintiff sought to use defendant brokers' alleged valuations of securities to shift the hedge funds' responsibility to conduct independent due diligence). *See also*, Reply § B.2. *infra*. In sum, BMO's alleged purported reliance was not reasonable.

4. <u>Proximate Cause</u>

As discussed above, Plaintiff concedes that there are no substantive allegations in the Complaint that O'Connor provided BMO with quotes that were inconsistent with market prices. *See* Reply § A.1.(b) *supra*. Thus, any purported reliance by Plaintiff on O'Connor's alleged price quotations could not have resulted in any injury to BMO. *See* O'Connor Br. at 15. Plaintiff also attempts to connect the sparse allegations in the Complaint against O'Connor to BMO's losses on Lee's EOO trades. Opp. Br. at 34. However, the allegations in the Complaint are inadequate to support an assertion that O'Connor: (i) knew that Lee was manipulating the manner in which he recorded the EOO trades with BMO; (ii) knew the value of Lee's natural gas book; or (iii) brokered any of the EOO trades on Lee's behalf or on behalf of any so-called Nordlicht-affiliated counterparties.  *See* O'Connor Br. at 20-21. Finally, Plaintiff's admission that "timely access to independent pricing would have alerted BMO to price movements so it would have taken steps to hedge against risks it would have then realized were in its portfolio" (Opp. Br. at 35) defeats any argument that the Complaint has adequately alleged proximate cause. By Plaintiff's own

allegations, it had "timely access" to independent pricing through Totem (in addition to other non-defendant brokers) as early as 2005 and paid for Totem's pricing information since September 2006. *See* Cpt. ¶¶ 65, 68 and 70. That Plaintiff failed to act upon this information and mitigate its losses does not overcome the fact that BMO had <u>timely access</u> to independent pricing. BMO, and BMO alone, always retained control of how it conducted its IPV process. Thus, Plaintiff has failed to adequately allege that O'Connor's purported conduct proximately caused any alleged losses sustained by BMO.

**B.**     **Negligent Misrepresentation Elements**

1.     Special Relationship

As set forth in the MTD, under New York law, in order to properly plead a claim of negligent misrepresentation, a complaint must allege that a special relationship existed between the parties requiring the defendants to speak with care.  O'Connor Br. at 15-16. Contrary to Plaintiff's assertions (Opp. Br. at 48), Defendants' duties to BMO as Plaintiff's brokers[7] do not extend beyond their contractual duties to execute trades with reasonable care.  Nor do the facts alleged in the Complaint transform such ordinary broker-client relationships in connection with a non-discretionary account[8] into a "special relationship" under the law.

> The transformative 'special circumstances' recognized in the cases are circumstances that render the client dependent – a client who has impaired faculties, or one who has a closer than arms-length relationship with the broker, or one who is so lacking in sophistication that de facto control of the account is deemed to rest in the broker. The law thus imposes additional extra-contractual duties on brokers who can take unfair advantage of their customers' incapacity or simplicity.

---

[7] As set forth in O'Connor's Brief (at 17), the Complaint does not specifically allege that O'Connor acted as Plaintiff's broker. We set forth the arguments herein, however, assuming *arguendo* that the Complaint makes such an implication.

[8] *See* O'Connor Br. at 17.

*De Kwiatkowski v. Bear, Stearns & Co., Inc.*, 306 F.3d 1293, 1308 (2d Cir. 2002). In *De Kwiatkowski*, a customer with vast wealth, substantial trading experience and business sophistication[9] sought to hold his brokerage firm liable for net losses in his account of $215 million for the brokerage firm's alleged negligence with regard to services it allegedly undertook to provide plaintiff beyond those that are usual for nondiscretionary brokerage accounts. *Id.* at 1296. Despite the brokerage firm's having provided market information and trading advice from its financial experts from time to time based upon its specialized knowledge in addition to consummating transactions for plaintiff's account, the Second Circuit held that the defendant did not expand its contractual brokerage duties to its non-discretionary customer. *Id.* at 1308-09.

Like the plaintiff in *De Kwiatkowski*, BMO "is the very opposite of the naïve and vulnerable client who is protected by 'special circumstances." *Id.* at 1309. BMO is a highly sophisticated international bank that, through one of its four operating groups – BMO Capital Markets, operates as a broker-dealer and trades for itself and for clients in the same markets as Defendants and has access to the same exchange settlement prices as Defendants. Cpt. ¶¶ 3, 19-20, 23. BMO also maintains a department dedicated to managing its trading and operational risks. *See* Cpt. ¶¶ 24, 78, 81. BMO maintained an 'arms-length' relationship with the Defendants. Cpt. ¶¶ 2-5. Clearly, Plaintiff is not subject to any 'special circumstances' that would justify transforming its ordinary broker-client relationship with O'Connor (or the other Defendants) into a 'special relationship.' "Absent an express advisory contract, there is no fiduciary duty on [the] part of [the] broker-dealer unless the customer is infirm or ignorant of business affairs." *DeKwiatkowski*, 306 F. 3d at 1308-09 (internal quotation omitted).

---

[9] The plaintiff apparently made and lost hundreds of millions of dollars trading in currency futures in a period of less than five months and lost $112 million in a single trading day. *Id.* at 1295-96.

Furthermore, contrary to Plaintiff's assertion (and the cases cited by Plaintiff – Opp. Br. at 50), the Complaint does not adequately allege that O'Connor undertook (on the one alleged occasion, let alone over four years) "to provide BMO's Market Risk department with purportedly independent price quotes for the twice-monthly IPV process." Opp. Br. at 49. Curiously, the entire "IPV process" is never explained in the Complaint (only very select parts thereof).  More significantly, the Complaint does not contain any allegations that (i) the IPV process was ever explained to O'Connor in connection with the pricing information he purportedly provided to BMO or (ii) that BMO's Market Risk department's expectations in connection with the IPV process were explained to O'Connor. *See also,* Reply § B.2. *infra;* O'Connor Br. at 3, 12. Therefore, any assertion that O'Connor committed to such an "undertaking" is pure speculation and not supported by sufficiently pled allegations against him.

2.     *Kimmel* Criteria

Moreover, the Opposition Brief (at 48) does not cure the lack of particularized factual allegations in the Complaint demonstrating that a "special relationship" exists between the Plaintiff and O'Connor (or the other Defendants) based on the factors enunciated in *Kimmel v. Schaefer,* 89 N.Y.2d 257, 264, 652 N.Y.S.2d 715 (1996).  In *Kimmel,* the New York Court of Appeals held that courts should assess the following criteria to determine whether a plaintiff's reliance on the alleged misrepresentation was justified:

> [i] whether the person making the representation held or appeared to hold unique or special expertise; [ii] whether a special relationship of trust or confidence existed between the parties; and [iii] whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.

*Id.; accord B&M Linen, Corp. v. Kannegiesser,* No. 08 Civ. 10093, 2010 U.S. Dist. LEXIS 4257, at *20 (S.D.N.Y. January 19, 2010). Plaintiff's argument that it has sufficiently pled all

three factors with Rule 9(b) particularity is fatally flawed.[10] First, neither the Complaint nor the Opposition Brief cites to any representation made by <u>O'Connor</u> in which he held himself or Optionable out as having unique or special expertise that BMO, a broker-dealer in the commodities market, did not have itself. *See* Opp. Br. at 48, Cpt. ¶¶ 74-76.[11] Additionally, even if such allegations amounted to representations that Optionable was a "legitimate broker" who was a "major player[] in the commodity derivatives market" (Opp. Br. at 48), the Complaint itself belies any suggestion that BMO was "wholly without knowledge" and wanted assurances from O'Connor (or the other Defendants) because of his/their "exclusive knowledge."[12]  *See Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of NY,* 375 F.3d 168, 189 (2d Cir. 2004)* ("The New York Court of Appeals has observed that a relationship sufficiently special to justify reliance (and a subsequent action for negligent misrepresentation) may arise when a person 'wholly without knowledge seek[s] assurances from one with exclusive knowledge'") (internal citations omitted); *see also, Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 789 (2d Cir. 2003) (holding that plaintiff could not claim it relied upon the "special expertise" of the defendant that was also held by the plaintiff).  Indeed, the Complaint clearly suggests that, as early as 2005, BMO was receiving pricing information in connection with its IPV process from

---

[10] Because the negligent misrepresentation claim, as pleaded, appears to be based upon the alleged false and misleading nature of Defendants' alleged representations, "the negligent misrepresentation claim must be pleaded with [Rule 9(b)] particularity." *Welch v. TD Ameritrade,* No. 07 Civ. 6904 (RJS), 2009 U.S. Dist. LEXIS 65584, at *70, (S.D.N.Y. July 27, 2009).

[11]  The Opposition Brief makes reference to representations allegedly made by other Optionable employees beginning in September 2006 – over a year after the allegedly negligent misrepresentation made by O'Connor in March 2005. The cited alleged misrepresentation purportedly led to the Opex Analytics RealMarks Agreement with Plaintiff dated February 23, 2007. No representation is alleged to have been made by or pertaining to O'Connor.

[12] Plaintiff demonstrates its expertise, knowledge of and access to commodity derivatives markets and prices throughout the Complaint, including, without limitation, at ¶¶ 19-20, 23-24, 27(b), 39-40, 65-68, 70-71 and 96.

brokers <u>in addition to the Defendants</u>. Cpt. ¶ 68. Thus, Plaintiff has failed to meet the first *Kimmel* factor.

Moreover, allegations that BMO consciously disregarded pricing information that BMO paid for and received from Totem that clearly indicated that Lee's valuations were inflated (thereby enabling BMO to book higher profits) does not establish a "special relationship of trust or confidence" between Plaintiff and O'Connor (or the other Defendants). *See* Opp. Br. at 48. That BMO would ignore its own market risk department's recommendations due to Lee and Moore's vouching (with or without the alleged aid of Optionable and Cassidy) (Cpt. ¶¶ 65- 72) speaks volumes about Lee's and Moore's influence within BMO rather than Plaintiff's purported trust or confidence in the Defendants. "Where parties deal at arm's length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *B&M Linen,* 2010 U.S. Dist. LEXIS 4257, at *6-7 (internal citations omitted) (stating that under New York law, courts determine the existence of a fiduciary relationship by an "inquiry into whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge") (internal quotations and citations omitted). *See also, DeBlasio v. Merrill Lynch & Co., Inc.,* No. 07 Civ 318 (RJS), 2009 WL 2242605 at *28 (S.D.N.Y. July 27, 2009) ("the fact that one party trusts the other is insufficient to create a fiduciary relationship") (internal citations omitted).

Significantly, Plaintiff cites only to <u>conclusory</u> allegations to support its position that *Kimmel's* third factor has been sufficiently pled: "the defendants knew that BMO used defendants' purportedly independent quotes to verify Lee's valuation of the natural gas options book and supplied the quotes for that purpose." Opp. Br. at 48; *see* Cpt. ¶¶ 27, 142. However, a careful review of the Complaint reveals that there is <u>not</u> a single allegation identifying any

specific misrepresentation made by O'Connor to BMO or any specific representation made to

O'Connor informing him that BMO anticipated or expected that the quotes he proffered would

be independent of any pricing information from BMO. Indeed, the Complaint fails to allege any

facts in support of the assertion that O'Connor "was aware of the use to which the information

would be put and supplied it for that purpose." *See* O'Connor Br. at 13-14, 18; *Kimmel,* 89

N.Y.2d at 264. Because Plaintiff cannot allege such facts, it has resorted to, and solely relies

upon, concluding that it is so. But, conclusory allegations will not suffice. "[P]leadings that… are

no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal,* 129

S.Ct. 1937, 1950 (2009); *accord, ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d

Cir. 2007) ("Allegations that are conclusory or unsupported by factual assertions are

insufficient").

**C.**     **Aiding and Abetting Fraud and Breach of Fiduciary Duty Elements**

   1.     Actual Knowledge

   As demonstrated repeatedly herein and in the MTD, none of the paragraphs in the

Complaint that are cited by Plaintiff in its Opposition Brief demonstrate by non-conclusory, non-

"clumping" allegations that O'Connor was provided with knowledge that BMO wanted or

expected to receive independent market quotes or that O'Connor knew Lee was committing

fraud or was breaching his fiduciary duty to BMO.[13] *See* Opp. Br. at 55–56, 58.[14] Plaintiff argues

that ¶ 27 of the Complaint carefully "delineate[s] which defendants knew certain things or acted

in certain ways." Opp. Br. at 55, n. 43. Notably, however, O'Connor is never mentioned in the

allegations set forth in ¶¶ 27(a), (b) or (c). The sparse allegations made specifically against

---

[13] There are no allegations whatsoever in the Complaint linking O'Connor to Moore's alleged breach of fiduciary duty to BMO.

[14] *See* Cpt. ¶¶ 25, 26, 27, 29 – 36, 37, 72 and 153.

O'Connor in the Complaint do not aggregate to imply actual knowledge, despite any suggestion otherwise.

        3.    <u>Substantial Assistance</u>

The Opposition Brief barely addresses the specific pleading deficiencies against O'Connor raised in his MTD with regard to the issue of substantial assistance. *See* O'Connor Br. at 21, 24 and Opp. Br. 59-61. Moreover, Plaintiff's arguments serve to confirm O'Connor's motion in several respects. By omission, Plaintiff concedes that O'Connor did <u>not</u> induce Lee to enter into any EOO trades or connect Lee to a number of counterparties purportedly related to Nordlicht and Optionable (*See* Opp. Br. at 60). Paragraph 164 of the Complaint, cited by Plaintiff to support its argument that the defendants obtained significant commissions and fees for allegedly colluding with Lee significantly does <u>not</u> refer to any fees or commissions allegedly earned by O'Connor.  *Id.* Indeed, O'Connor was a salaried employee of Optionable. The other purported "economic motive" alleged against O'Connor – the sale of his Optionable shares to NYMEX – is insufficiently linked temporally to O'Connor's alleged provision of quotes to BMO two years earlier. *See* O'Connor Br. at 11-12; Reply § A.1.2. *supra.*

**D.**    **Either Rule 9(b) Applies to Negligent Misrepresentation and Aiding and Abetting**
        <u>**Breach of Fiduciary Duty Claims Against O'Connor or They Are Time Barred**</u>

In its Brief, Plaintiff concedes that Rule 9(b)'s particularity standard applies to its negligent misrepresentation claim against O'Connor (Opp. Br. at 46), but plays semantic games in an effort to evade such a concession with regard to its aiding and abetting breach of fiduciary duty claim against O'Connor. *See* Opp. Br. at 53, n.39 and 63; Reply at 1, n. 2 *supra*. However, Plaintiff does admit that the allegations in support of the aiding and abetting breach of fiduciary duty <u>mirror</u> the allegations in support of the aiding and abetting fraud claim, i.e. that they are based on allegations of fraud. *Id.* Either such claims are fraud-based claims and Rule 9(b) applies

(O'Connor Br. at 8, 22; Reply at 1, n. 2 *supra*) or they are not and are time barred as against O'Connor (O'Connor Br. at 24-26). Plaintiff cannot have it both ways.

## <u>CONCLUSION</u>

For the foregoing reasons, the reasons set forth in his MTD, and the arguments and authorities set forth in his co-Defendants briefs, which are incorporated herein by reference as they relate to O'Connor, the Plaintiff has failed to allege facts sufficient to support its claims against O'Connor, and therefore, the Complaint must be dismissed as against O'Connor pursuant to Rules 8(a)(2), 9(b) and 12(b)(6) with prejudice and without leave to amend.

Dated: New York, New York
      March 16, 2010

Respectfully submitted,

**McCormick & O'Brien, LLP**

By:    /s/ Liam O'Brien
Liam O'Brien, Esq. (LO-3930)
Marni Rae Robin (MR-3461)
9 East 40th Street, 4th Floor
New York, New York 10016
Tel: (212) 286-4471
Fax: (212) 504-9574
lobrien@mcoblaw.com
mrobin@mcoblaw.com

*Attorneys for Edward J. O'Connor*

15