UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

BANK OF MONTREAL,                                        :
                                                         :
                              Plaintiff,                 :
            -against-                                    :
                                                         :        No. 1:09-cv-07557 (GBD)
OPTIONABLE, INC., MF GLOBAL INC.,                        :
KEVIN P. CASSIDY, EDWARD J. O'CONNOR                     :        ORAL ARGUMENT REQUESTED
MARK A. NORDLICHT, RYAN B.                               :
WOODGATE, SCOTT CONNOR, and                              :
JOSEPH D. SAAB,                                          :
                              Defendants.                :
                                                         :
-------------------------------------------------------------X


## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## MARK NORDLICHT'S MOTION TO DISMISS THE COMPLAINT


Eliot Lauer
Jason Gottlieb
**CURTIS, MALLET-PREVOST, COLT**
**  & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Tel:  (212) 696-6000
Fax:  (212) 697-1559

*Attorneys for Defendant Mark Nordlicht*

## TABLE OF CONTENTS

**PAGE**

ARGUMENT ........................................................................................................... 1

    I.    BMO FAILS TO STATE A CLAIM AGAINST NORDLICHT FOR
        AIDING AND ABETTING FRAUD ................................................................... 3

    II.   BMO FAILS TO STATE A CLAIM AGAINST NORDLICHT FOR
        AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY ..................... 8

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*380544 Canada, Inc. v. Aspen Technology, Inc.*,
  544 F. Supp. 2d 199 (S.D.N.Y. 2008) ...................................................................... 2

*380544 Canada, Inc. v. Aspen Technology, Inc.*,
  633 F. Supp. 2d 15 (S.D.N.Y. 2009) ........................................................................ 6

*ABF Capital Mgmt. v. Askin Capital Mgmt.*,
  957 F. Supp. 1308 (S.D.N.Y. 1997) ......................................................................... 9

*Allied Irish Banks, P.L.C. v. Bank of America, N.A.*,
  No. 03 Civ. 3748 (DAB), 2006 U.S. Dist. LEXIS 4270 (S.D.N.Y. Feb. 2, 2006) ............. 3, 5, 7

*Armstrong v. McAlpin*,
  699 F.2d 79 (2d Cir. 1983) ................................................................................... 4

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
  479 F. Supp. 2d 349 (S.D.N.Y. 2007) ...................................................................... 5

*Glidepath Holding B.V. v. Spherion Corp.*,
  590 F.Supp.2d 435 (S.D.N.Y. 2007) ........................................................................ 6

*Global Mins. & Metals v. Holme*,
  824 N.Y.S.2d 210 (1st Dep't 2006) ........................................................................ 13

*Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  No. 00 Civ. 8688 (WHP), 2003 WL 22218643 (S.D.N.Y. Sept. 25, 2003) ........................... 13

*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999) ................................................................................. 8

*In re Blech Sec. Litig.*, 928 F. Supp. 1279 (S.D.N.Y. 1996) ............................................... 3

*In re Reserve Fund Sec. and Deriv. Litig.*,
  Nos. 09 MD.2011(PGG), 09. Civ. 4346(PGG), 2010 WL 685013 (S.D.N.Y. Feb. 24, 2010)... 6

*JPMorgan Chase v. Winnick*,
  406 F. Supp. 2d 247 (S.D.N.Y. 2005) ................................................................... 9, 10

*Kaufman v. Cohen*,
  307 A.D.2d 113 (1st Dep't 2003) .......................................................................... 10

*Kolbeck v. LIT America, Inc.*,
  939 F. Supp. 240 (S.D.N.Y. 1996) ..................................................................... 10, 11

*Kramer v. Lockwood Pension Servs., Inc.*,
  653 F. Supp. 2d 354 (S.D.N.Y. 2009) .................................................................... 13

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ................................................................................. 4

*Mazzaro de Abreu v. Bank of America Corp.*,
   525 F. Supp. 2d 381 (S.D.N.Y. 2007) .............................................................................. 11, 12

*Meisel v. Grunberg*,
   651 F. Supp. 2d 98 (S.D.N.Y. 2009) .................................................................................. 11

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank N.A.*,
   261 F.R.D. 13 (S.D.N.Y. 2009) ........................................................................................... 11

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs.*,
   652 F. Supp. 2d 495 (S.D.N.Y. 2009) ................................................................................. 5

*Primavera Familienstiftung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997) ...................................................................................... 2, 3

*Rosner v. Bank of China*,
   No. 06 CV 13652, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008)........................................ 4

*S.E.C. v. Dunn*,
   587 F. Supp. 2d 486 (S.D.N.Y. 2008) ................................................................................. 7

*Shields v. Citytrust Bankcorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) .................................................................................................. 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)................................................................................................................ 6

*Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP*,
   586 F. Supp. 2d 119 (S.D.N.Y. 2008) ................................................................................. 4

**Statutes**

Fed.R.Civ.P. 8(a) ........................................................................................................................ 12

Fed.R.Civ.P. 9(b) ................................................................................................................. passim

Defendant Mark Nordlicht respectfully submits this memorandum of law in further support of his motion to dismiss Bank of Montreal's ("BMO" or "Plaintiff") Complaint, and in reply to BMO's Memorandum of Law in Opposition ("Opposition" or "Opp.").[1]

## ARGUMENT

BMO's core Opposition argument relating to Mark Nordlicht is based entirely on conclusory allegations, which are themselves camouflaged in allegations in which BMO has "lumped in" Nordlicht along with three or four others.  The most that BMO's Complaint is able to assert, even using this much-maligned group pleading, is the conclusory allegation that Nordlicht, along with others, "developed the idea" of having BMO execute perfectly lawful "exchange of option for options" ("EOO") trades, and "introduced" the "concept" of those trades to BMO's David Lee (Opp. 8, 43, 60).  BMO adds that some of these perfectly lawful trades were with entities "affiliated" with Nordlicht (Opp. 9, 34, 56, 60).  But repeating these conclusory allegations regarding lawful and ordinary trading activity is not a substitute for the requirement that BMO set forth specific facts establishing that Nordlicht had <u>actual knowledge</u> of Lee's fraud, and substantially assisted it.  Indeed, BMO cannot point to any factual allegations in the Complaint particular to Nordlicht at all, much less non-conclusory allegations that Nordlicht knowingly assisted Lee with wrongdoing.

The Complaint contains no allegations that meet Rule 9(b) standards regarding when, how, or where Nordlicht "introduced" anything to Lee, or even what that means.  The Complaint never alleges any particular communication between Nordlicht and Lee.  Nor does the Complaint allege what the substance of that communication was supposed to have been.  The Complaint does not allege that the EOO trades, standing alone, were illegal or fraudulent, and so

---

[1]    Nordlicht also incorporates the arguments set forth in Optionable's reply brief.

merely "introducing" such presumptively legal trades cannot be assisting a fraud.  The Complaint alleges that Lee later booked these transactions fraudulently, but contains no allegation – other than a purely conclusory assertion – that Nordlicht actually knew, or even had any reason to know, that Lee was doing that.  *See* Compl. ¶¶ 82-91.

Moreover, each allegation against Nordlicht "clumps" him in with several other defendants, never alleging what, exactly, Nordlicht himself is purported to have done.  Neither the Complaint nor the Opposition ever make any allegation of knowledge or substantial assistance against Nordlicht alone.[2]  Such clumping violates the particularity standards of Rule 9(b).  *See 380544 Canada, Inc. v. Aspen Technology, Inc.*, 544 F. Supp. 2d 199, 218 (S.D.N.Y. 2008).  BMO argues that such "clumping" does not merit dismissal.  *See* Opp. 55 n.43, citing *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 128 (S.D.N.Y. 1997).  But *Primavera* is entirely to the contrary:  it holds that where sufficient allegations were made "particular to each defendant," clumping defendants together in <u>some</u> allegations was not a reason to dismiss.  But *Primavera* does dismiss other individuals who were merely "clumped in" with other defendants, without individualized allegations.  See *id*. at 126 (Rule 9(b) not satisfied by "vague allegations of conduct that clump individuals together. … This prohibition on vague clumping protects a potentially innocent party's reputation from groundless accusations … and serves to prevent

---

[2]       *See* Compl. ¶ 88 ("Optionable, Cassidy, Nordlicht, and others developed the idea of the EOO trades…"); ¶ 89 ("Optionable, Cassidy, O'Connor, and Nordlicht also connected Lee to counterparties…"); ¶ 159 ("Optionable, Cassidy, O'Connor, and Nordlicht …"); ¶ 160 (same); ¶ 161 (same); ¶ 162 (same).  *See also* Opp. 8 ("Cassidy, Nordlicht, and others at Optionable developed the idea…"); Opp. 9 ("Optionable, Cassidy, O'Connor, and Nordlicht also connected Lee to counterparties…"); Opp. 22 ("Nordlicht, Cassidy, and O'Connor saw BMO's business as key…"); Opp. 23 ("With respect to the Optionable defendants and Nordlicht, the Complaint also satisfies the motive and opportunity alternative test …."); Opp. 24 ("the Optionable defendants and Nordlicht had a strong incentive to continue with the fraud…"); Opp. 34 ("Lee, with the knowledge and substantial assistance of Optionable, Cassidy, O'Connor, and Nordlicht, manipulated…"); Opp. 43 ("Optionable defendants, along with Nordlicht, are alleged to have introduced Lee to the concept of EOO transactions"); Opp. 56 ("the Complaint sets forth the Optionable defendants and Nordlicht's knowledge of Lee's misrepresentations"); Opp. 59 ("Optionable, Cassidy, O'Connor, and Nordlicht also assisted Lee's fraudulent scheme…"); Opp. 60 ("Optionable, Cassidy, Nordlicht, and others developed the idea of the EOO trades…").

abuse of process."); *see also, e.g.*, *In re Blech Sec. Litig.*, 928 F. Supp. 1279, 1294 (S.D.N.Y. 1996).[3]  Without specific factual allegations against Nordlicht alone, dismissal is appropriate.

## I.     BMO FAILS TO STATE A CLAIM AGAINST NORDLICHT FOR AIDING AND ABETTING FRAUD

Plaintiffs confirm that aiding and abetting a fraud requires actual knowledge of, and substantial assistance in, that fraud.  Opp. 52, citing *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, No. 03 Civ. 3748 (DAB), 2006 U.S. Dist. LEXIS 4270, at *32 (S.D.N.Y. Feb. 2, 2006).  Moreover, Plaintiffs do not dispute that they must allege both actual knowledge and substantial assistance with particularity under Rule 9(b).[4]  Neither is alleged here.

### A.     BMO Fails to Allege Actual Knowledge

As observed in Nordlicht's motion to dismiss, the few paragraphs of the Complaint relevant to Nordlicht entirely fail to allege facts giving rise to a "strong inference" that he had "actual knowledge" of Lee's fraud.  *Lerner*, 459 F.3d at 293.[5]  In response, the Opposition merely points to conclusory allegations that Nordlicht had knowledge of, and benefited from, the EOO trades – which were themselves not alleged to be illegal.  *See* Opp. 56, citing Compl. ¶¶ 88-90.  In an attempt to paper over the Complaint's lack of allegations of actual

---

[3]      BMO claims it was "careful to delineate which defendants knew certain things or acted in certain ways." Opp. 55 n.43.  But BMO evidences that claim by pointing only to Complaint ¶ 27 – a paragraph that does not mention Nordlicht at all.

[4]      C.f. Opp. 53 n.39 (disputing the application of Rule 9(b) to aiding and abetting a breach of fiduciary duty but not aiding and abetting fraud).  *See also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006) (dismissing aiding and abetting fraud claim where plaintiffs failed to allege "actual knowledge of fraud with the particularity necessary to survive the heightened pleading requirements" of Rule 9(b)); *Armstrong v. McAlpin*, 699 F.2d 79, 92-93 (2d Cir. 1983) (same); *Rosner v. Bank of China*, No. 06 CV 13652, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008) (aiding and abetting fraud requires "actual, not constructive, knowledge of the fraud.").

[5]      When discussing Nordlicht, the Opposition inevitably points to Complaint ¶¶ 84-91.  Elsewhere in the Complaint, BMO conclusorily alleges that Optionable, Cassidy, O'Connor, and Nordlicht "knew that Lee misrepresented to BMO that the EOO trades were legitimate transactions that generated a net profit for BMO" (id. ¶ 183); "knew that … the reason Lee arranged the EOO trades was to conceal the overvaluation of and losses suffered by [Lee]" (id.); and "substantially assisted with Lee's breaches of fiduciary duty by arranging the EOO trades with BMO" (id. ¶ 184).  These purely conclusory recitations of the elements do not raise any inference of actual knowledge of Lee's wrongdoing.

knowledge, BMO's Opposition implies – but, notably, does not state – that Nordlicht must have known about Lee's fraud.  *See, e.g.*, Opp. 54-56, citing *Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP*, 586 F. Supp. 2d 119, 131 (S.D.N.Y. 2008) (discussing so-called "red flags" that would have alerted auditors to an alleged fraud).[6]  However, neither of the two "red flags" BMO cites establishes a strong inference of Nordlicht's actual knowledge.[7]

First, BMO implies that Nordlicht must have known about Lee's fraud because the EOO transactions were consistently "unfavorable" to BMO.  Opp. 9, 34, 54; citing Compl. ¶¶ 89-90.  But no facts are alleged to suggest that Nordlicht knew, believed, or even could have known that the terms were "unfavorable" to BMO on a net basis.  Even had Nordlicht known it, the Complaint does not allege why he should have taken that alleged fact to be a sign of fraud.

By stating that the American-style options commanded a premium over the European-style options (Compl. ¶ 84), BMO implies that consistently trading European-style for American-style options is obviously a money-losing proposition.  But even if that were true, it does not follow that such a transaction would be a red flag of fraud.  Each option covers a number of underlying futures contracts (*see id.*), which individually could be worth different amounts to different investors.  For all Nordlicht knew (and again, he is not alleged to have

---

[6]     The two other cases BMO cites in this section discuss inferences that can be drawn from statements made <u>by</u> the alleged principal <u>to</u> the alleged aider and abettor.  See *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 03-Civ. 3748 (DAB), 2006 U.S. Dist. LEXIS 4270, at *32 (S.D.N.Y. Feb. 2, 2006); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 370 (S.D.N.Y. 2007).  Here, the Complaint does not allege any particular communications between Nordlicht and Lee, or that Nordlicht knew of any alleged communications between Lee and other defendants.

[7]     BMO conflates the standard for fraud with that for aiding and abetting.  The *AIB* court's discussion of "red flags" was in the context of the scienter elements of the underlying fraud.  As *AIB* itself confirms, "New York has not adopted a constructive knowledge test for aiding and abetting liability.  Rather, actual knowledge is required." *Id*. at *33.  While a strong inference of scienter to plead the underlying fraud "can be satisfied by a showing of facts that constitute strong circumstantial evidence of … recklessness, aiding and abetting requires a reasonable inference of <u>actual</u> knowledge." *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs.*, 652 F. Supp. Wd 495, 502-503 (S.D.N.Y. 2009) (internal citations and quotation marks omitted) (emphasis added).

known anything), Lee was selling the American-style options (or perhaps their underlying

contracts; or perhaps bundled with other options) to a third party who was willing to pay a

premium, thus earning a net profit for BMO, even if it lost money on the EOO transaction.

        Lee was the head of an options trading desk at a major financial institution, with

oversight from his compliance department, his legal department, senior personnel, and multiple

regulatory authorities in the United States and Canada.  It is simply implausible (and much less

plausible than the alternatives) that Nordlicht – even if alleged to have known anything about

Lee's trading – would have assumed Lee's trading was a crude fraud rather than the legitimate

strategy of a skilled and experienced trader at a major bank.[8]  *Cf. Tellabs, Inc. v. Makor Issues &*

*Rights, Ltd.*, 551 U.S. 308, 324 (2007) (for inference of scienter to be strong, "a reasonable

person [must] deem [it] cogent and at least as compelling as any opposing inference one could

draw from the facts alleged.")[9]  Given these circumstances, Nordlicht's alleged knowledge of the

EOO transactions does not give rise to an inference of his actual knowledge of any fraud.

        <u>Second</u>, BMO repeatedly implies that Nordlicht must have known about Lee's

fraud because Optionable, Cassidy, O'Connor, and Nordlicht "connected Lee to counterparties

affiliated with Nordlicht" for trades on terms that were unfavorable to BMO.  Opp. 9, 34, 56, 60,

---

[8]     *Thomas H. Lee Equity Fund* is thus easily distinguishable.  There, the complaint alleged that defendants knew of the existence of (among other things) the repeated movement of large receivables through unsecured transactions with third parties straddling the end of financial reporting periods.  Defendants were also informed, in writing, of at least one potentially fraudulent transaction.  These allegations, coupled with "longstanding concerns regarding the high risk of material misstatement" posed by intercompany transactions," were sufficient red flags to support a strong inference of actual knowledge.  *Lee*, 586 F. Supp. 2d at 132-33.  Here, plaintiffs point to no such red flags that would have alerted Nordlicht to Lee's fraud.

[9]     The Second Circuit has not yet definitively decided *Tellabs*' effect on the requirements for pleading scienter in actions governed by Rule 9(b) but not by the PSLRA.  *See In re Reserve Fund Sec. and Deriv. Litig.*, Nos. 09 MD.2011(PGG), 09. Civ. 4346(PGG), 2010 WL 685013 at *6 (S.D.N.Y. Feb. 24, 2010).  However, district courts in this circuit have repeatedly cited *Tellabs* as persuasive authority on this issue.  *See, e.g., 380544 Canada, Inc. v. Aspen Technology, Inc.*, 633 F. Supp. 2d 15, 29 (S.D.N.Y. 2009); *Glidepath Holding B.V. v. Spherion Corp.*, 590 F.Supp.2d 435, 451 (S.D.N.Y. 2007).  The case BMO cites as counterexample, *S.E.C. v. Dunn*, 587 F. Supp. 2d 486 (S.D.N.Y. 2008), employs a different standard for scienter not because it is a non-PSLRA case, but because it is an enforcement case brought the S.E.C., which has a different standard altogether.  *Id.* at 501.

citing Compl. ¶¶ 88-90.  But there is no allegation there, or anywhere else in the Complaint, that it was illegal, or in any way inappropriate, for Nordlicht (along with others) to connect Lee to counterparties for these presumptively legal trades – even ones affiliated with Nordlicht himself.

Finally, BMO suggests that the Complaint adequately pleads a "strong inference of intent" because of Nordlicht's purported motives:  the "unusually large" fees supposedly involved, and the related attempt to portray Optionable as successful so that Nordlicht could sell shares to NYMEX.  *See* Opp. 23-24, citing Compl. ¶¶ 56-57, 131, 162.[10]  Even if "intent" could substitute for the requisite "actual knowledge,"[11] intent is not well-plead by these facts either. The Complaint does not allege how the fees and commissions were "unusually large" for this type or volume of trading, rather than just run-of-the-mill, industry standard fees.  Compl. ¶ 91; c.f. *AIB* at **19-20 (noting that defendants charged exorbitant interest on currency transactions).

Moreover, even after the NYMEX sale, Nordlicht remained Optionable's second largest shareholder, with 16% of its stock.  Compl. ¶ 9.  If his motive were to profit from yet-undiscovered wrongdoing, he could have sold that stock.  Continuing to hold 16% undermines any inference of scienter.  *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 540-41 (3d Cir. 1999) (insider's post-sale retention of "sizable percentage" of company stock weakens inference of scienter).[12]  Thus, these allegations do not even establish intent, let alone actual knowledge.

---

[10]     Of those paragraphs in the Complaint, paragraphs 57 and 131 don't mention Nordlicht at all.  Paragraph 56 refers to Nordlicht only implicitly, clumping him in with "the other defendants."

[11]     BMO cites *AIB* at **19-21, reciting a standard for a principal's intent to defraud, not an aider and abettor's knowledge of the fraud.

[12]     The case on which BMO relies, *Shields v. Citytrust Bankcorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994), is unavailing.  *Shields* merely states that the plaintiffs there did not allege that false statements were made in an effort to sell off shares held by management.  In any event, the Complaint does not allege that Nordlicht made any false statements at all, much less that any such statements were made for the purpose of illegally selling stock.

### B.   BMO Fails to Allege Substantial Assistance

BMO argues that "the Complaint alleges that Nordlicht and Optionable directly participated in the fraudulent conduct."  Opp. at 60 n. 46.  But BMO does not point to any paragraph in the Complaint actually making that factual allegation.  There is none.

Instead, BMO falls back on contending that Nordlicht (and others) "introduced" the "concept" of the EOO transactions, which "subverted BMO's internal controls and masked massive losses in Lee's trading book."  Opp. 43, citing Compl. ¶¶ 82-95; *see also* Opp. 8-9, 60.  But the allegation that Nordlicht suggested a type of trade – even if that allegation were made with the requisite particularity – does not suffice to allege proximate causation of Lee's fraud, which is necessary to establish substantial assistance.  *Fraternity Fund*, 479 F. Supp. 2d at 370; *Armstrong*, 699 F.2d at 92.[13]  Beyond the purely legal conclusion that Lee manipulated the EOO trades "with the knowledge and substantial assistance of Optionable, Cassidy, O'Connor, and Nordlicht," Opp. at 34, citing Compl. ¶¶ 84-91, there is no allegation anywhere in the Complaint suggesting that Nordlicht had anything to do with, much less substantially assisted, Lee's fraud.

BMO responds that even the "mere execution of trades in the ordinary course" can suffice to allege substantial assistance, particularly where there is a "'heightened economic motivation' on the part of the aider and abettor."  Opp. Br. 59-60, quoting *ABF Capital Mgmt. v. Askin Capital Mgmt*., 957 F. Supp. 1308, 1330 (S.D.N.Y. 1997) and *JPMorgan Chase v. Winnick*, 406 F. Supp. 2d 247, 257 (S.D.N.Y. 2005).  Those cases are easily distinguishable: each complaint alleged that the aider and abettor performed otherwise "routine" tasks with the awareness and explicit aim of furthering a fraud.  In *ABF Capital*, brokers colluded to create

---

[13]     Merely introducing Lee to a particular type of trade could not possibly have "proximately caused" Lee's fraud because of a substantial intervening action:  Lee's decision to "manipulate[] the manner in which the EOO trades were entered into BMO's systems."  Compl. ¶ 92.

"volatile and virtually unmerchantable securities" that they (and the primary perpetrators) called "toxic" and "crap" – an opinion allegedly captured in tape recordings – and sold millions of dollars worth of them while misrepresenting their value.  In *JPMorgan*, the alleged aider and abettor personally negotiated transactions that were carried out solely to inflate revenue.  In both cases, the substantial assistance prong was satisfied because actual knowledge had been adequately alleged as well.  The knowledge of the fraud transformed the otherwise innocent acts (brokering securities or negotiating transactions) into substantial assistance.  In contrast, there is no allegation here that Nordlicht had any idea that Lee was manipulating otherwise legal trades to commit fraud.  Where actual knowledge is not adequately alleged, the innocent act of proposing a trade (even if that were adequately alleged) cannot be deemed to be assisting a fraud.

## II.   BMO FAILS TO STATE A CLAIM AGAINST NORDLICHT FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY

BMO agrees that aiding and abetting a breach of fiduciary duty also requires actual knowledge and substantial assistance.  *See* Opp. 53, citing *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003); *see also Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996).  Because, as BMO concedes, aiding and abetting fraud and breach of fiduciary duty are "parallel in several respects," Opp. 53, Nordlicht's arguments demonstrating that there are no factual allegations of Nordlicht's actual knowledge or substantial assistance in any fraud also demonstrate that Nordlicht did not aid or abet any breach of fiduciary duty.[14]

Only two further points remain to be made.

---

[14]   It is not the case, however, that allegations that state a claim for aiding and abetting fraud necessarily state a claim for aiding and abetting a breach of fiduciary duty.  Stating a breach of fiduciary duty claim requires more:  it requires allegations of the duty, and of the alleged abettor's knowledge of that duty.  "A party may knowingly aid and abet a second party in a fraud without knowing that the same efforts were also aiding and abetting the second party in the breach of a fiduciary duty to a third party."  *Mazzaro de Abreu v. Bank of America Corp.*, 525 F. Supp. 2d 381, 393 n.12 (S.D.N.Y. 2007).  This distinction is particularly important in this case:  there are no allegations that Nordlicht knew of Lee or Moore's status as fiduciaries.  *Id.* at 393.

First, BMO claims that Rule 9(b)'s particularized pleading standard does not apply to aiding and abetting a breach of fiduciary duty.  Opp. at 53 n. 39, citing *Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank N.A.*, 261 F.R.D. 13 (S.D.N.Y. 2009).  However, "[t]o the extent the allegations of the underlying breach of duty are based on fraud," Rule 9(b) applies.  *See Kolbeck*, 939 F. Supp. at 245; *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 108 n.4 (S.D.N.Y. 2009).  *Musalli Factory* is not contrary:  it holds that Rule 9(b) does not apply to the particular claim of aiding and abetting a breach of fiduciary duty made in that case.  But it does not analyze whether or to what extent the allegations of the underlying breach of duty were based on fraud.  Here, BMO's allegations relating to Nordlicht's purported role in Lee's breach of fiduciary duty are identical – verbatim – to the allegations for aiding and abetting fraud.  *Compare* Compl. ¶¶ 159-66 with Compl. ¶¶ 182-89.  Thus, Rule 9(b) applies.  Even under Rule 8(a), as *Musalli Factory* instructs, BMO must at least "allege some facts, in non-conclusory terms, to show knowing participation by defendants in the alleged breach."  261 F.R.D. at 24, citing cases.  Here, BMO fails to do even that.

Second, in its lengthy footnote exploring New York law on whether and to what extent Lee actually owed a fiduciary duty to BMO (Opp. 53 n. 40), BMO entirely misses the point:  the Complaint contains no particularized factual allegation that Nordlicht knew anything in particular about Lee, much less what his employment status was; or whether that status meant that he owed some duty to BMO; or if so, what the scope of that duty was; or how Nordlicht was supposed to have known that information.  Simply put, there is no factual allegation that Nordlicht <u>actually knew</u> that Lee (or Moore[15]) had any fiduciary duties.  It is insufficient for BMO to argue that it is "obvious" from the Complaint that "defendants knew" about Lee's

---

[15]        No allegations in the Complaint whatsoever link Nordlicht to Moore's alleged breach of fiduciary duty.

employment status (and thus, somehow, the scope of his fiduciary duties).  To avoid dismissal, the Complaint must contain particularized allegations "that the defendant had actual knowledge of the primary violator's status as a fiduciary and actual knowledge that the primary violator's conduct contravened a fiduciary duty."  *Mazzaro de Abreu*, 525 F. Supp. 2d at 393 , quoting *Goldin Assocs., L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688 (WHP), 2003 WL 22218643, at *8 (S.D.N.Y. Sept. 25, 2003).  The Complaint fails to do so.  Under *Mazzaro de Abreu*, dismissal of this count is appropriate on this point alone – an argument BMO entirely fails to address.[16]

## CONCLUSION

For the reasons stated above, the Complaint against Nordlicht should be dismissed with prejudice.

Dated:  New York, New York
        March 19, 2010

CURTIS, MALLET-PREVOST,
 COLT & MOSLE LLP


By:     /s/ Eliot Lauer
        Eliot Lauer
        Jason Gottlieb
     101 Park Avenue
     New York, New York  10178-0061
     Tel:  (212) 696-6000
     Fax:  (212) 697-1559

        *Attorneys for Defendant Mark Nordlicht*

---

[16]     BMO also fails to distinguish two cases on the subject.  BMO claims that *Global Mins. & Metals v. Holme*, 824 N.Y.S.2d 210 (1st Dep't 2006) is inapposite because it was on summary judgment.  But that case recites the rule that "plaintiff may not merely rely on conclusory and sparse allegations that the aider or abettor knew about the primary breach of fiduciary duty," 824 N.Y.S.2d at 217; exactly the situation here.  And BMO claims that *Kramer v. Lockwood Pension Servs., Inc.*, 653 F. Supp. 2d 354, 380-81 (S.D.N.Y. 2009) is inapposite because there, no fiduciary duty actually existed.  But the *Kramer* court also held that to the extent plaintiff merely alleged that defendant "should have known" of the fiduciary status of another, such a conclusory claim cannot succeed as a matter of law.  Here, the Complaint does not even make the conclusory allegation.